William W. POND, Appellant–Plaintiff,

v.

Paul B. McNELLIS and Linda Peters Chrzan, Appellees–Defendants.

No. 02A05–0506–CV–341.

Court of Appeals of Indiana.

April 13, 2006.

---

4. Local rules are required after January 1, 2007. T.R. 81(A).

Robert L. Nicholson, Beckman & Lawson, Fort Wayne, for Appellant.

Diana C. Bauer, Carson & Boxberger, Fort Wayne, Christine A. DeSanctis, Lafayette, for Appellee.

## OPINION

SHARPNACK, Judge.

William Pond appeals the trial court's grant of summary judgment to · Paul McNellis and Linda Chrzan and denial of his motion for summary judgment. Pond raises one issue, which we revise and restate as whether the trial court erred by granting McNellis and Chrzan's motion for summary judgment and denying Pond's motion for summary judgment concerning his request for restitution for attorney fees paid to McNellis and Chrzan, his ex-wife's attorneys. We affirm in part, reverse in part, and remand.

The relevant facts follow. This is the fourth appeal concerning the dissolution of marriage between Pond and Brenda Armentrout (formerly Pond). *See Pond v. Pond,* No. 02A03–9710–CV–379, 698 N.E.2d 886 (Ind. Ct.App. June 22, 1998), *trans. denied; Pond v. Pond,* 700 N.E.2d 1130 (Ind.1998); *Armentrout v. Pond,* No. 02A04–0008–CV–348, 747 N.E.2d 79 (Ind. Ct.App. April 19, 2001), *trans. denied.* On August 14, 1993, Pond and Brenda Armentrout entered into a postnuptial agreement, Paragraph 25 of which states:

> In the event an attack by one party as to the validity of this agreement is unsuccessful, the party initiating such action shall be responsible for all attorney's fees and costs incurred by both parties in the prosecution or defense of such action.

Appellant's Appendix at 92. On November 17, 1993, Armentrout filed for dissolution. McNellis and Chrzan represented Armentrout in the dissolution proceedings, in which Armentrout challenged the validity of the postnuptial agreement.

On September 8, 1995, in the dissolution proceeding, the trial court approved the parties' postnuptial agreement and ordered the parties to perform its terms except for Paragraph 25, which the trial court held to be unconscionable. *Pond v. Pond,* 700 N.E.2d 1130, 1134 (Ind.1998). After rejecting Paragraph 25, the trial court ordered that Pond "should be responsible for the payment of attorney fees on behalf of [Armentrout] in the sum of $69,000.00 which is ordered paid in full by

[Pond] sixty (60) days from the date hereof." Appellant's Appendix at 105.

Pond appealed the trial court's dissolution decree and raised the following issue, "whether the trial court erred by holding paragraph 25 of the postnuptial agreement, requiring the party unsuccessfully attacking the agreement to pay the attorney's fees incurred, unconscionable." *In re Marriage of Pond,* 676 N.E.2d 401, 405 (Ind.Ct.App.1997), *affirmed in part and reversed in part,* 700 N.E.2d 1130 (Ind. 1998).

While the appeal was pending, on October 16, 1995, McNellis and Chrzan filed a notice of intent to file and hold an attorney fee lien, which stated:

COMES NOW Paul B. McNellis and Linda Peters Chrzan, Attorneys for Respondent, [Armentrout], and pursuant to I.C. 33–1–3–1, file notice of their intent to hold a lien for their attorneys' fees due and owing on the judgment herein rendered in favor of [Armentrout], and in support of same states:

1. That the marriage between the parties was dissolved in this action on September 8, 1995.

2. That Paul B. McNellis and Linda Peters Chrzan were the attorneys for the Respondent, [Armentrout], who employed said attorneys to obtain a judgment and decree in her favor in said action.

3. That on September 8, 1995, as part of the judgment rendered, [Pond] was ordered to pay attorney fees on behalf of [Armentrout] in the sum of Sixty Nine Thousand Dollars ($69,000.00) within sixty (60) days.

4. That on September 8, 1995, the Court also ordered the marital residence listed for an additional period of One Hundred Eighty (180) days.

5. That Paul B. McNellis and Linda Peters Chrzan have billed [Armentrout] for their attorneys' fees plus advances for their representation in this matter and presently there is a sum of Sixty Nine Thousand Seven Hundred Forty Three Dollars and Eighty–Six Cents ($69,743.86) representing attorneys' fees and advances presently due and unpaid.

6. That Paul B. McNellis and Linda Peters Chrzan do hereby file their Notice of Intent to File and Hold Attorneys' Fee Lien within sixty (60) days from the date the judgment was rendered in favor of [Armentrout] to set forth their intention to hold a lien against the assets set off to [Armentrout], which said lien is in the sum of Sixty Nine Thousand Seven Hundred Forty Three Dollars and Eighty Six Cents ($69,743.86).

Appellant's Appendix at 120–121.

At some point, Pond and Armentrout received an offer to sell their real estate. Pond filed an emergency motion to escrow the proceeds of the sale of real estate and for a stay of the proceedings. On October 18, 1996, the trial court entered a ruling on Pond's motion, which stated:

"That the attorney fee lien in favor of attorney Paul McNellis in the amount of Sixty Nine Thousand Dollars ($69,-000.00), exclusive of costs and interests, is ordered paid from the proceeds of the sale of the parties' real estate . . . .

\* \* \* \* \*

That the payment of said lien amount at the time of closing shall constitute a release of said lien and a partial satisfaction of the judgment for attorney fees in favor of Respondent, [Armentrout], and against Petitioner, [Pond]."

Appellant's Supplemental Appendix at 123. Pond also filed with this court a petition

for immediate temporary stay, which stated:

> [Pond] is willing to post as security for payment of the $69,000 attorney fee judgment in favor of [Armentrout], and on which attorney McNellis has filed a notice of intent to hold attorney fee lien, the sum of $69,000 or such other amount in cash which the Court determines is necessary to protect payment of the judgment in the event it is upheld on appeal.

Appellant's Appendix at 161. Pond's petition was denied. At the closing, the gross amount due to the Ponds was reduced by $69,000.00 for the release of the attorney lien to Paul McNellis.

This court handed down its opinion regarding Pond's appeal on February 24, 1997 and affirmed the trial court's decision regarding Paragraph 25. *In re Marriage of Pond,* 676 N.E.2d at 401. The Indiana Supreme Court granted transfer and addressed the enforceability of Paragraph 25, the provision shifting attorney fees. The Indiana Supreme Court held:

> To the extent that the judgment of dissolution rejects and refuses to enforce Paragraph 25, we reverse. As previously noted, the trial court, intentionally disregarding Paragraph 25, determined that the husband should pay $69,000.00 of the $89,262.25 attorney fees claimed by the wife. On remand, the trial court shall give full force and effect to this provision by determining the amount of reasonable attorney fees and costs that the parties incurred directly from the challenge to the validity of the parties' settlement agreement, and shall reduce its prior award of attorney fees accordingly.

*Pond,* 700 N.E.2d at 1137 (footnote omitted).

On December 2, 1998, Pond filed a request for a pre-trial conference, which listed only Armentrout as the respondent, and argued:

> * * * * *
>
> 2. The Supreme Court's ruling necessitates the consideration by this Court of the following issues:
>
> 2.1 Determining the fees incurred by [Pond] in defending [Armentrout]'s contest of validity of the parties' post-nuptial agreement;
>
> 2.2 Determining the extent to which the attorney's fees previously awarded to [Armentrout] include an award for fees incurred by her in connection with contesting the validity of the parties' post-nuptial agreement;
>
> 2.3 Reversing this Court's prior award of spousal maintenance to [Armentrout]; and
>
> 2.4 Determining whether, to the extent this Court's prior award of attorney's fees to [Armentrout] was improper, any of the amounts paid by [Pond] may be recovered directly from attorneys McNellis and Chrzan.

Appellant's Appendix at 69–70.

On October 5, 1999, the trial court entered the following order:

### FINDINGS AND ORDER ON ISSUE OF LIABILITY FOR RESTITUTION OF ATTORNEY FEE JUDGMENT

[Pond] having appeared with counsel and [Armentrout] having appeared with counsel, and the former attorneys of record for [Armentrout], Paul McNellis and Linda Chrzan, having appeared to dispute this court's personal jurisdiction over said counsel, and arguments having been heard and memorandum having been considered on the issue of liability for restitution for an attorney fee judgment; the COURT NOW FINDS, that:

1. In the decree of dissolution of marriage this court, former special judge Roger Hultquist then presiding, [sic] ordered [Pond] to pay [Armentrout]'s attorney fees in the sum of $69,000.00. Her total attorney fees at that time were in the sum of $89,262.25 (Footnote 10, *In re: the Marriage of: William Pond v. Brenda Pond*, 02S03–9707–CV–405) [02S03–9707–CV–418, 700 N.E.2d 1130 (Ind.1998)].

2. On October 18, 1996, and while the appeal on the decree was pending, this court, the undersigned special judge presiding, issued an order requiring the attorney fee lien on the marital residence in the sum of $69,000.00 be paid upon the sale of the marital residence. The payment of the fees from the marital residence sale proceeds was determined to be a "... partial satisfaction of the judgment for attorney fees in favor of the Respondent, [Armentrout], and against Petitioner, [Pond]," ("Ruling on Motion for Stay of Proceedings and to Escrow Proceeds of Sale of Real Estate" dated October 18, 1996).

3. A temporary stay of the execution of the attorney fee lien against the sale proceeds of the marital residence was sought from the Indiana Court of Appeals and was denied.

4. Setting aside the attorney fee order, the Supreme Court ordered on remand "... the trial court shall give full force and effect to this provision [paragraph 25 of the post nuptial agreement] by determining the amount of reasonable attorney fees and costs that the parties incurred directly from the challenge to the validity of the parties' settlement agreement, and shall reduce its prior award of attorney fees accordingly." (02S03–9707–CV–418 [700 N.E.2d 1130])

5. The Decree of Dissolution, dated September 8, 1996, recited in part at page 10, paragraph 28, that, "It is the judgment of the court that Petitioner Husband should be responsible for the payment of attorney fees on behalf of [Armentrout] in the sum of $69,000.00 which is ordered paid in full by Petitioner Husband sixty (60) days from the date hereof."

6. [Pond] prays that by way of procedure the court first determine what sums if any are due from [Pond] to [Armentrout] for attorney fees as required under the Supreme Court remand. Thereafter, [Pond] requests that the court determine from whom any reimbursement for feeds [sic] paid should be required. [Pond] argues that [Armentrout]'s former legal counsel, Mr. Paul McNellis and Ms[.] Linda Chrzan and/or their law firm should then be included with [Armentrout] in the court's determination of liability.

7. Mr. Paul McNellis, Ms[.] Linda Chrzan and/or their law firm have not been joined as parties to this action nor are they named in any separate civil action for the reclamation of attorney fees paid.

8. [Pond] contracted, authorized and received the services for which the attorney fees were incurred and derived a benefit therefrom. [Armentrout] has not asserted that the fees charged to her by her former counsel are unreasonable.

**Therefore, the COURT NOW CONCLUDES, that**

1. The court, in the original decree, clearly expressed, by the manner in which it phrased its order for fees, that the same was issued for the benefit of [Pond].

2. Fees paid on behalf of [Armentrout] and to [Armentrout]'s former attorneys, satisfied [Armentrout]'s contractual obligation to them. [Armentrout] thus received the primary benefit from the court's order for the payment of attorney fees.

3. On reversal of a judgment, the person who derived the primary benefit from the judgment is responsible for restitution.

4. The responsibility of this court under the remand order of the Court of Appeals [sic] is not simply to impose restitution of a paid judgment for a sum of money previously determined. Rather, the court is obligated to determine what portion of the fees herein ordered and paid on behalf of [Armentrout] represented fees incurred in challenging the validity of the past [sic] nuptial agreement.

5. A requirement that [Pond] seek restitution of a yet undetermined sum directly from [Armentrout] serves the interest of judicial economy. In addition, excusing [Armentrout]'s former legal counsel from liability under this action meets the requirements of due process [that] might otherwise be violated if restitution is required of a non party.

ACCORDINGLY, THE COURT NOW ORDERS AND DECREES that [Armentrout] is the primary responsible party for the reimbursement of any or all of the judgment for attorney fees paid by [Pond] and remanded for further consideration by the Indiana Court of Appeals. [sic]

THE COURT FURTHER ORDERS AND DECREES that attorney Paul McNellis, Linda Chrzan and/or their law firm of Wyss, McNellis, Riebnack and Myers are relieved from liability for restitution of any fees as may be determined by this court as directed under the remand of the Indiana Court of Appeals. [sic]

*Id.* at 197–199.

On November 2, 1999, Pond filed a motion to correct error and alternative request for certification of the trial court's order for interlocutory appeal. On November 29, 1999, the trial court entered the following order:

**The court having reviewed [Pond]'s "Motion to Correct Error" filed November 2, 1999; and there being no request from either party for a hearing thereon; the COURT NOW FINDS AND RULES:**

1. That [Pond] in his request for a pretrial conference filed December 2, 1998, requested that the court determine whether, "...to the extent this court's prior award of attorney fees to [Armentrout] was improper, any amounts paid by [Pond] may be recovered directly from the attorneys McNellis and Chrzan".

2. In additional thereto, [Pond] filed his memorandum addressing the, [sic] ".. potential liability of Paul McNellis, Esq. to reimburse him [Petitioner] for certain fees paid by [Pond] on behalf [sic] [Armentrout], Respondent..."

3. [Pond] asserts that the initial determination whether any fees should be paid to [Pond] can and should be made without the presence of the aforementioned attorneys and without joining either or both of them as parties.

4. The court notes that the sums received by Attorneys McNellis and Chrzan were for fees owed to them for services rendered to [Armentrout]. [Armentrout] has not asserted that the fees were improper, nor does she contend that the fees were not reason-

ably incurred for the services she requested and received. The propriety of the fees charged by attorneys McNellis and Chrzan is not at issue.

5. The sums paid to attorneys McNellis and Chrzan were not contested by the other party to the contract ([Armentrout]). Upon payment, the funds became the property of the attorneys. The placement of said property in jeopardy and/or the depravation [sic] of such property from the attorneys McNellis and Chrzan can not occur without meeting basic tenants [sic] of due process.

6. To preclude a person as party on the issue of the amount of restitution due but to preserve him or her for liability thereon does not afford that individual of a full opportunity for a fair and impartial hearing on the entire range of the issue.

7. The court finds no error in its ruling of October 5, 1999, and the motion is denied.

**THE COURT FURTHER FINDS AND RULES ON [POND]'S REQUEST FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL:**

1. Appellate Rule 4(B)(6)(b), cited by [Pond] in his motion, provides that a court may certify an appeal on an interlocutory order if the court finds on petition that "...the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case."

2. In this case, the remedy after final judgment in this case is not inadequate. An appeal from the present interlocutory order will not provide the greater judicial economy, reduce legal expenses or promote a more orderly disposition of the case.

**ACCORDINGLY, [Pond]'s request for certification is denied.**

*Id.* at 205–206. Thus, the trial court refused to certify the order for interlocutory appeal.

On October 15, 2002, Husband and Wife filed a "stipulation and agreed judgment," which the trial court approved and entered. *Id.* at 109. The agreed judgment contained, in pertinent part:

### STIPULATION AND AGREED JUDGMENT

[Pond], Petitioner, by counsel, and [Armentrout], Respondent, by counsel file this Stipulation and Agreed Judgment as follows:

### PRELIMINARY STATEMENT

1. It is the desire of both [Armentrout] and [Pond] to make a final determination of certain Postnuptial Agreement litigation expense liability and to return the parties to their respective status had previous Trial Court rulings been made in accordance with the subsequent Appellate and Supreme Court rulings.

\* \* \* \* \*

30. By order dated October 26, 1998, the Indiana Supreme Court reversed Judge Hultquist's decision and ordered the Court on remand to "give full force and effect to [the attorney fee provision in the Post–Nuptial Agreement][1] by determining the amount of reasonable attorney fees and costs that the parties incurred directly from the challenge to the validity of the parties' settlement agree-

---

1. Bracketed phrase appears in original.

ment, and shall reduce its prior award of attorney fees accordingly."

31. Pursuant to the Supreme Court's decision, on August 24, 1999, [Pond] filed a request for the Court to determine the amount of reasonable attorney's fees and costs incurred in the challenge of the validity of the parties' settlement agreement and to reduce prior awards accordingly.

32. The Trial Court previously issued the following awards of attorney's fees (collectively, the "Fee Orders") in favor of [Armentrout]:

| Date of Award | Award Amount |
|---|---|
| 28-Jul-94 | $ 12,000.00 |
| 8-Sep-95 | $ 69,000.00 |
| 27-Jun-97 | $ 36,000.00 |
| Total | $117,000.00 |

33. The Fee orders were rendered prior to the Indiana Supreme Court decision of October 26, 1998 that ordered reduction of [Armentrout]'s prior attorney's fee awards.

34. The Fee Orders have been paid in full by [Pond] and were directly paid to [Armentrout]'s attorneys.

35. The Fee Orders include attorneys' fees associated with litigation of the Postnuptial Agreement.

36. It is the desire of both [Armentrout] and [Pond] to return the parties to their respective status had each Fee Order been made in accordance with the subsequent Supreme Court ruling upholding the validity of the Postnuptial Agreement.

37. Both [Armentrout] and [Pond] agree that each Fee Order should be reviewed separately and corrected in such a manner as to return all parties more completely to the position they occupied had the Postnuptial Agreement been given full force and effect.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:

a. The July 27, 1994, September 8, 1995 and June 27, 1997 awards of attorneys' fees in favor of [Armentrout], and the Interlocutory Order, are hereby vacated in their entirety.

b. [Pond] has paid [Armentrout] all expenses incurred by [Armentrout] in connection with dissolution and custody matters in the amount of $34,041.13, which amount has already been credited in these calculations with no net award due her because of the amounts that she owes to [Pond].

c. Judgment is hereby rendered against [Armentrout] and in favor of [Pond] in the sum of $454,582.95 for [Pond]'s net legal expenses defending and enforcing the Postnuptial Agreement, for [Armentrout]'s Postnuptial Agreement litigation expenses that [Pond] has previously paid and for which he is entitled to reimbursement, and for interest due on such sums from the date of payment.

d. [Armentrout] shall, within 10 days, convey to [Pond] her interest in Polis Partnership and Sundance stock and shall receive a credit of $200,000 against the judgment with such credit, any other amounts paid by [Armentrout], and any amounts recovered by [Pond] from any other source as reimbursement for attorney's fees, being be [sic] applied in the order the legal fees were originally paid by [Pond], from the earliest to the latest.

\* \* \* \* \*

f. [Armentrout] shall further provide such cooperation as [Pond] may reasonably require in connection with any claim against third parties for the reimbursement of attorney's fees, in-

cluding providing to [Pond] a current financial statement.

*Id.* at 109–119.

On October 10, 2003, Pond filed a complaint against Paul B. McNellis and Linda Peters Chrzan for recovery of attorney fees wrongfully paid. McNellis and Chrzan filed a motion to dismiss in which they argued that: (a) the trial court did not have jurisdiction to vacate the order awarding attorney fees with the agreed entry; (b) Pond's claim was barred under the doctrine of res judicata because Pond failed to join McNellis and Chrzan as parties needed for just adjudication in the previous action; (c) Pond and Armentrout could not stipulate to questions of law in the agreed entry; and (d) Armentrout was the proper party from whom Pond should seek restitution of any attorney fees wrongfully paid. The trial court ruled that McNellis and Chrzan's motion to dismiss would be treated as a motion for summary judgment. Pond filed a motion for summary judgment in which he argued that: (a) he was entitled to recovery of $117,000 from McNellis and Chrzan as a matter of law; and (b) his lawsuit was not barred. On June 9, 2005, the trial court issued an order that denied Pond's motion for summary judgment and granted McNellis and Chrzan's motion for summary judgment.

■ The sole issue is whether the trial court erred by granting McNellis and Chrzan's motion for summary judgment and denying Pond's motion for summary judgment concerning his request for restitution for attorney fees paid to his ex-wife's attorneys, McNellis and Chrzan. Our standard of review for a trial court's grant or denial of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C);

*Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

■ The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

### A. *McNellis and Chrzan's Motion for Summary Judgment*

In McNellis and Chrzan's motion for summary judgment, they raised the following arguments: 1) Pond's claim was barred under the doctrine of res judicata because Pond failed to join McNellis and Chrzan as parties needed for just adjudication in the previous action; 2) Pond and Armentrout could not stipulate to questions of law; and 3) Armentrout was the proper party from whom Pond should seek restitution of any attorney fees wrongfully paid. We will address each argument separately.

#### 1. *Res Judicata*

■ McNellis and Chrzan argue that the trial court's October 5, 1999, order precludes Pond from seeking restitution from them in this action due to res judicata. "For principles of res judicata to apply, there must have been a final judgment on the merits and that judgment must

have been entered by a court of competent jurisdiction." *Matter of Sheaffer*, 655 N.E.2d 1214, 1217 (Ind.1995).

■ We first discuss whether the October 5, 1999, order, which concluded that McNellis and Chrzan were not liable, constituted a final judgment on the merits in a court of competent jurisdiction. Pond argues that the October 5, 1999, order was "at best, an interlocutory order." Appellant's Reply Brief at 3. In the context of res judicata, Indiana courts have discussed the definition of a final judgment. "Final judgments dispose the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it." *Adams v. Marion County Office of Family and Children*, 659 N.E.2d 202, 205 (Ind.Ct.App. 1995). Ind. Trial Rule 54 defines a "judgment" as "a decree and any order from which an appeal lies."

■ Here, after the trial court issued its October 5, 1999, order, Pond filed a motion to correct error and an alternative request for certification of the order for interlocutory appeal. The trial court denied Pond's motion to correct error and

denied Pond's request for certification. The October 5, 1999, order was not appealable because the trial court denied Pond's request for the certification of the order for interlocutory appeal. *See INB Nat'l Bank v. 1st Source Bank*, 567 N.E.2d 1200, 1202 (Ind.Ct.App.1991) (interlocutory orders not appealable by right are not appealable at all in the absence of the certification of both the trial and appellate court). Further, "[t]he filing of or ruling on a motion to correct error cannot transform an interlocutory matter into a final judgment for purposes of appeal." *Doperalski v. City of Michigan City*, 619 N.E.2d 584, 585 (Ind.Ct.App.1993). Thus, the fact that the trial court denied Pond's motion to correct error does not transform an interlocutory matter into a final appealable judgment. *See, e.g., Bayless v. Bayless*, 580 N.E.2d 962, 966 (Ind.Ct.App.1991) (holding that the denial of a motion to correct errors did not transform the matter into a final judgment), *reh'g denied, trans. denied.* Under the circumstances, we conclude that the October 5, 1999, order was not a final judgment.[2] Accordingly, res judicata does not apply.[3] *See, e.g.,*

2. In McNellis and Chrzan's motion for summary judgment, they also appeared to argue that the trial court no longer had jurisdiction to permit changes to the October 5, 1999, order via the agreed judgment pursuant to Ind.Code § 33-1-6-3 (Repealed by Pub.L. No. 98-2004, § 164 (eff. July 1, 1997) and replaced by Ind.Code § 33-23-2-4 (2004)), which provided:

All courts retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same conditions as they retained power and control during the term of court in which the judgments were rendered.

Because we conclude that the October 5, 1999, order was interlocutory, the trial court did not lose jurisdiction after ninety days. *See State v. Collier*, 165 Ind.App. 239, 247, 331 N.E.2d 784, 789 (1975) (holding that trial court's order that stated that the trial court

"finds against plaintiff as to the following defendants ..." was not a final judgment and trial court was not deprived of jurisdiction to modify entry after ninety days). Thus, the trial court had jurisdiction to modify the October 5, 1999, order, and McNellis and Chrzan's summary judgment argument to the contrary fails.

3. In McNellis and Chrzan's motion for summary judgment they argued that the two subdoctrines of res judicata, claim preclusion and issue preclusion, applied. Because we conclude that the October 5, 1999, order did not constitute a final judgment, we need not analyze the subdoctrines of res judicata. *See, e.g., Sweeney v. State*, 704 N.E.2d 86, 94 n. 11 (Ind. 1998) ("The doctrine of res judicata is divided into two subdoctrines—claim preclusion and issue preclusion (collateral estoppel). Defendant asserts that both subdoctrines apply. However, because we conclude that the

*Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 478 (Ind.Ct.App.2000) (holding that the trial court properly declined to grant preclusive effect to the circuit court's order and consequently, appellant was not collaterally estopped from raising claims because the prior decision was not final and was subject to change), *trans. denied.*

### 2. *Agreed Judgment*

■ McNellis and Chrzan argue that the trial court properly granted them summary judgment because Pond and Armentrout could not stipulate to a question of law. Specifically, McNellis and Chrzan argue that "Pond cannot, by mutual agreement with his former wife, among themselves, bind McNellis and Chrzan to repayment of attorney fees." Appellee's Brief at 14. "Because 'questions of law are beyond the power of agreement by the attorneys or parties,' any agreement purporting to stipulate to a question of law is a nullity." *Price v. Freeland,* 832 N.E.2d 1036, 1043 (Ind.Ct.App.2005) (quoting *Yelton v. Plantz,* 226 Ind. 155, 165, 77 N.E.2d 895, 899 (1948)).

Pond counters that the "[s]tipulated [j]udgment does not (and, because the Trial Court refused to make them a party to the action below, could not) address Defendant's liability—that is the purpose of this action." Appellant's Reply Brief at 5. We agree with Pond.

The agreed judgment, as McNellis and Chrzan concede, did not address the "critical issue of restitution." Appellee's Brief at 14. The agreed judgment's only mention of any third parties stated, "[Armentrout] shall further provide such cooperation as [Pond] may reasonably require in connection with any claim against third parties for the reimbursement of attorney's

fees, including providing to [Pond] a current financial statement." Appellant's Appendix at 119. Because the agreed judgment did not bind McNellis and Chrzan to repayment of attorney fees, we cannot say that Pond and Armentrout stipulated to a question of law regarding the restitution of fees by McNellis and Chrzan in the agreed judgment. *See, e.g., Battershell v. Prestwick Sales, Inc.,* 585 N.E.2d 1, 4 (Ind.Ct. App.1992) (holding that the parties did not stipulate to a question of law in their agreed entry), *trans. denied.* Thus, McNellis and Chrzan's argument fails.

### 3. *Restitution from Attorneys*

Because the trial court had jurisdiction to modify the October 5, 1999, order, Pond's claim is not barred by res judicata, and the stipulation and agreed judgment did not stipulate to a question of law, we will address Pond's argument that McNellis and Chrzan are obligated to make full restitution to Pond for the fees improperly paid. The issue of whether a party can recover attorney fees paid to the other party's attorneys pursuant to a judgment that is reversed appears to be an issue of first impression in Indiana.

### a. *P.B. v. T.D.*

The closest case on point appears to be *P.B. v. T.D.,* 561 N.E.2d 749, 751 (Ind. 1990). In *P.B.,* the Indiana Supreme Court addressed the issue of: "When a dissolution court orders one party to pay fees to the other's attorney, the fees are then paid, and the fee award reversed on appeal, must the party seeking reimbursement file a separate action against the lawyer?" *P.B.,* 561 N.E.2d at 749. The court held "that the party seeking reimbursement need not start a second lawsuit

---

hearing on the motion to quash the first Writ did not result in a final judgment on the

merits, it is unnecessary to analyze the subdoctrines of res judicata."), *cert. denied,* 527

to collect what is due. That party may ask the dissolution court to order reimbursement directly from the former spouse." *Id.*

The court interpreted Ind.Code § 31–1–11.5–16 (West Supp.1990)[4], which provided:

> (a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

The Indiana Supreme Court stated,

> Because the trial court specifically made the award of attorney's fees payable to the wife's attorney and because the attorney can enforce the award in his own name, the Court of Appeals reasoned that a refund of fees must then be obtained by pursuing the attorney holding the award. There is symmetry to this analysis, but it presses the logic of the statute too hard.

> \* \* \* \* \*

> Similarly, permitting the husband to seek reimbursement from the wife under circumstances like the ones in this case saves everyone time and money. Whether the husband gets reimbursed by the attorney and the attorney collects from the wife or the husband collects directly from the wife, the result would be the same. The wife still will have paid $4500.

U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999).

*Id.* at 750–751. While the Indiana Supreme Court noted that "[w]hether the husband could have sought reimbursement from the wife's lawyer in the dissolution proceeding is not presented by the facts of this case," the court held that "one who received *any* benefit from the judgment must make as full restitution to the claimant as the circumstances permit." *Id.* at 751, 751 n. 3 (emphasis added).

b. *Recovery from a Party*

 A review of Indiana law that addresses whether a party can recover money paid on a judgment from another party reveals that "[w]hen a party to an action pays a judgment that is later reversed on appeal, that party is entitled to restitution." *P.B.*, 561 N.E.2d at 751 (relying on *Thompson v. Reasoner,* 122 Ind. 454, 24 N.E. 223 (1890)). *See Dickensheets v. Kaufman,* 29 Ind. 154, 154 (1867) (holding that "[m]oney voluntarily paid upon a judgment may, if inequitably retained after reversal of the judgment, be recovered back"); *Chicago & S.E. Ry. Co. v. Adams,* 26 Ind.App. 443, 445, 59 N.E. 1087, 1088 (1901) ("When appellant shows that the judgment which was the consideration for the payment has been declared a nullity, the law raises an obligation against appellee, who received the benefit of the judgment, to make restitution.").

 "[T]he equitable concept of unjust enrichment necessarily inheres any time the remedy of restitution is sought by a litigant, and we read our Indiana precedent accordingly." *Community Care Centers, Inc. v. Sullivan,* 701 N.E.2d 1234, 1239 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* "To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been

**4.** Repealed by Pub.L. No. 1–1997, § 157 (eff. July 1, 1997) and replaced by Ind.Code § 31–15–10–1 (2004).

conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.1991), *reh'g denied*, *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992).

c. *Restatement*

While Indiana law has addressed restitution against another party, Indiana law has not specifically addressed whether a party can obtain restitution from the party's attorney. However, as the parties suggest, the Restatement of Restitution is instructive.

The Restatement of Restitution § 74 addresses judgments subsequently reversed and provides:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

The comments to § 74 reveal that a "judgment creditor" and a "real party in interest" are liable for restitution. Comment d of § 74 states, in pertinent part: *"Restitution of money from judgment creditor.* If payment has been made to the judgment creditor or to his agent, or to an officer who has paid the judgment creditor, upon reversal of the judgment the payor is entitled to receive from the creditor the amount thus paid with interest." Comment k of § 74 states:

> *Restitution against other parties.* After the reversal of a judgment any person who, although not a party to the action,

was a real party in interest and who received payment in whole or in part as the beneficial owner or as one of several owners, is under a duty to restore the amount received by him.

Comment h of § 74 addresses restitution from an attorney of a judgment creditor and indicates that an attorney as a "bona fide purchaser" is not liable for restitution. Comment h states:

> *Restitution from attorney or agent of judgment creditor.* An attorney or other agent of the judgment creditor who receives payment from the judgment debtor or who receives the proceeds of sale of the debtor's things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him (see Illustration 20) since he received the money as a bona fide purchaser. On the other hand, the attorney of the judgment creditor who conducted the proceedings is not entitled to retain property which he purchased on execution sale under the judgment subsequently reversed (see Illustration 21). For this purpose he is in the position of the judgment creditor. If the judgment reversed was void (see § 73) and he directed the sale of the debtor's property, or if he knew that the judgment was obtained by fraud, he was a participant in a tort and cannot retain the proceeds of a sale or escape liability for having dealt with the debtor's things.[5]

**5.** The Reporter's notes to comment h of § 73 states:

*Illustrations:*

20. A obtains a valid judgment against B for $3000. B pays the amount of the judgment to C, A's attorney. At A's direction C expends $1000 to satisfy A's creditors and retains $2000 as compensation for his services in this suit and in previous ones. Upon reversal of the judgment, B is not entitled to restitution from C.

21. A obtains a judgment against B. At the execution sale, C, attorney of record for A, buys B's land, paying therefor $3000 which is paid to A. Upon reversal of the judgment B is entitled to restitution of the land from C, who has a right of restitution from A.

Pond argues that McNellis and Chrzan are liable because they are judgment creditors and real parties in interest. McNellis and Chrzan argue that Comment h should govern because they were bona fide purchasers. Thus, to determine whether McNellis and Chrzan are liable for restitution, we will discuss whether McNellis and Chrzan are: (a) bona fide purchasers; (b) judgment creditors; or (c) real parties in interest.

1. *Bona Fide Purchaser*

▇▇ The Restatement of Restitution § 172 addresses a bona fide purchaser and states:

(1) Where a person acquires title to property under such circumstances that otherwise he would hold it upon a con-

structive trust or subject to an equitable lien, he does not so hold it if he gives value for the property without notice of such circumstances.

(2) In the Restatement of this Subject such a transferee is called a bona fide purchaser.

Indiana law has also addressed the concept of a bona fide purchaser. "[T]o qualify as a bona fide purchaser, one has to purchase in good faith, for a valuable consideration, and without notice of the outstanding rights of others." *Keybank Nat'l Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind.Ct.App.1998). "The law recognizes both constructive and actual notice." *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind.2005).

The relevant inquiry here is whether McNellis and Chrzan had notice of Pond's outstanding rights. On September 8, 1995, the trial court rejected Paragraph 25 as unconscionable and ordered that Pond "should be responsible for the payment of attorney fees on behalf of [Armentrout] in the sum of $69,000.00 which is ordered paid in full by [Pond] sixty (60) days from the date hereof." Appellant's Appendix at 104–105. Pond appealed the trial court's ruling that refused to enforce Paragraph 25 of the postnuptial agreement. *See Pond v. Pond*, 700 N.E.2d 1130 (Ind.1998).

On October 16, 1995, while the appeal was pending, McNellis and Chrzan filed a notice of intent to file and hold an attorney fee lien. Appellant's Appendix at 120–121.

The creditor's attorney who has paid over the money to the creditor is not liable: *Penhallow v. Doane's Adm'rs*, 3 Dall. 54, 1 L.Ed. 507 (U.S.1795); *U.S. Bank v. Bank of Washington*, 6 Pet. 8, 6 L.Ed. 299 (U.S. 1832); *Pendergast v. Muns*, 59 S.D. 135, 238 N.W. 344 (1931).

An attorney who has paid himself for services out of money received from a sale is a bona fide purchaser: *Lowenstein v. Reikes*, 258 N.Y. 444, 180 N.E. 113 (1932); *Wright*

*v. Aldrich*, 60 N.H. 161 (1880) (payment to himself and others); Contra: *Warren v. Ry. Conductors*, 199 Mo.App. 200, 201 S.W. 368 (1918).

The creditor's attorney purchasing at the execution sale is not a bona fide purchaser: *Johnson v. McKinnon*, 54 Fla. 221, 45 So. 23 (1907); *Hays v. Cassell*, 70 Ill. 669 (1873); *Twogood v. Franklin*, 27 Iowa 239 (1869) (where he knew of an appeal bond).

Prior to the sale of the real estate, Pond filed an emergency motion to escrow the proceeds of the sale of real estate and for a stay of the proceedings, which provided in part:

\* \* \* \* \*

12. [Pond] has appealed the award of attorney's fees to [Armentrout] set forth in the Decree, and in fact has requested that the Court of Appeals award [Pond] his attorney's fees associated with litigating the validity of the Agreement.

\* \* \* \* \*

14. [Armentrout] has recently testified that she does not have any assets.

15. [Pond] reasonably believes that if [Armentrout] is allowed to receive any of the funds from the sale of the Real Estate, [Armentrout] will have no funds from which to pay an award of attorney's fees to [Pond] upon remand.

WHEREFORE, [Pond] requests that the proceeds from the sale of the Real Estate be attached pending resolution of the pending appeal.

Appellant's Appendix at 128.

On October 18, 1996, the trial court ruled on Pond's motion as follows:

"That the attorney fee lien in favor of attorney Paul McNellis in the amount of Sixty Nine Thousand Dollars ($69,-000.00), exclusive of costs and interests, is ordered paid from the proceeds of the sale of the parties' real estate ....

\* \* \* \* \*

That the payment of said lien amount at the time of closing shall constitute a release of said lien and a partial satisfaction of the judgment for attorney fees in favor of [Armentrout] and against [Pond]."

Appellant's Supplemental Appendix at 123. Pond also filed with this court a petition for immediate temporary stay, which was denied. Appellant's Appendix at 161.

Based on Pond's appeal of the trial court's failure to enforce Paragraph 25 and his attempts to prevent the payment of the $69,000 directly to McNellis and Chrzan, we conclude that McNellis and Chrzan had notice of the potential of Pond's outstanding rights. Thus, McNellis and Chrzan were not bona fide purchasers for value. *See Dunnington v. Elston,* 101 Ind. 373, 374–375 (1885) (holding that where the only title of a purchaser rests upon a judgment of a court of record, he is bound to take notice of the source of his title, and he is charged with notice of all the incidents to which the judgment is subject); *Smith v. Cottrell,* 94 Ind. 379 (1884) (holding that one who purchased while there was a right to a new trial outstanding was not a purchaser in good faith); *Grubb v. Childers,* 705 N.E.2d 180, 182 (Ind.Ct.App. 1998) (holding that knowledge supports the inference that a third party had constructive notice of appellee's potential interest), *reh'g denied; see also Twogood v. Franklin,* 27 Iowa 239 (1869) (holding that defendants made their purchases and received their deeds while the appeal was pending, "and therefore with knowledge of the plaintiff's rights and equities").

### 2. *Judgment Creditor*

▪ We next examine whether McNellis and Chrzan were judgment creditors. A "judgment creditor" is defined as "[a] person in whose favor a money judgment has been entered by a court of law and who has not yet been paid. One who has obtained a judgment against his debtor, under which he can enforce execution. A person in whose favor a money judgment is entered or a person who becomes entitled to enforce it. Owner of an unsatisfied

judgment." BLACK'S LAW DICTIONARY 844 (6th ed.1990).

Pond relies on *In the Matter of the Marriage of Mason*, 48 Wash.App. 688, 740 P.2d 356 (1987), for the proposition that McNellis and Chrzan were judgment creditors. In *Mason*, the court addressed the issue of whether the trial court could order restitution of sums paid to an attorney under a judgment when that judgment and the award of attorney fees is subsequently reversed on appeal. *Mason*, 740 P.2d at 357. McNellis and Chrzan argue that *Mason* is not persuasive because the underlying reason for the restitution in *Mason* was a rule of appellate procedure that mandated repayment of sums paid to an attorney when a judgment is reversed on appeal and that Indiana has no such rule. The *Mason* court did hold that "restitution of the attorney's fees ordered in this case is a matter of right under RAP 12.8;" however, the court also held that the trial court "had discretion under general equitable principles to enter its restitution order after this court's decision vacating the earlier award of attorney's fees." *Id.* at 358. In addition, the court held that an attorney was "a judgment creditor in his own right pursuant to the trial court's order under RCW 26.09.140," which provided, "The court may order that the attorney's fees be paid directly to the attorney who may enforce the order in his name." *Mason*, 740 P.2d at 357–358.

We find the reasoning in *Mason* persuasive. At the time that the trial court awarded McNellis and Chrzan attorney fees, Ind.Code § 31–1–11.5–16 (Supp. 1995),[6] governed attorney fees in an action for dissolution of marriage and legal separation and provided:

(a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. *The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.*

(emphasis added).

Ind.Code § 31–1–11.5–16 provided that McNellis and Chrzan could enforce the order awarding attorney fees from Pond. The dissolution court's September 8, 1995 order stated, "[Pond] should be responsible for the payment of attorney fees on behalf of [Armentrout] in the sum of $69,000.00 which is ordered paid in full by [Pond] sixty (60) days from the date hereof." Appellant's Appendix at 105. Further, McNellis and Chrzan filed an attorney lien. Thus, McNellis and Chrzan meet the definition of a "judgment creditor." *See* BLACK'S LAW DICTIONARY 844 (6th ed. 1990) (A "judgment creditor" is defined as "[o]ne who has obtained a judgment against his debtor, under which he can enforce execution. A person in whose favor a money judgment is entered or a person who becomes entitled to enforce it."); *see also State ex rel. McNabb v. Allen Superior Court No. 2*, 225 Ind. 402, 406–409, 75 N.E.2d 788, 791–792 (1947) (holding that as a general rule an attorney is not a party to litigation however "[t]here are circumstances ... when an attorney's right to a fee may be protected, such as where a lien is provided by statute"). Here, like in *Mason*, McNellis and Chrzan were judgment creditors under Ind.Code

---

**6.** Repealed by Pub.L. No. 1–1997, § 157 (eff. July 1, 1997) and replaced by Ind.Code § 31–15–10–1 (2004), which also provides, "The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name."

§ 31–15–10–1(b). Accordingly, we conclude that McNellis and Chrzan were proper parties from which Pond could seek restitution.[7] Thus, the trial court erred by granting summary judgment to McNellis and Chrzan on Pond's claim.

### B. *Pond's Cross Motion for Summary Judgment*

Pond filed a motion for summary judgment in which he argued that: (a) he was entitled to recovery from McNellis and Chrzan as a matter of law; and (b) his lawsuit was not barred. Pond asked that judgment be entered against McNellis and Chrzan in the amount of $117,000.

Because we have already determined that Pond could seek restitution from McNellis and Chrzan, we need only address the effect of the agreed judgment on McNellis and Chrzan. Pond argues that McNellis and Chrzan were not necessary parties to the dissolution action for the purpose of determining the fees that were improperly paid because the determination of the proper amount of attorney fees is a question of fact.

Courts in this state have repeatedly held that, absent fraud or lack of consent, a trial court must approve an agreed judgment. *State ex rel. Prosser v. Indiana Waste Systems, Inc.*, 603 N.E.2d 181, 186 (Ind.Ct.App.1992). Further, in *State v. Huebner*, 230 Ind. 461, 468, 104 N.E.2d 385, 388 (Ind.1952), the Indiana Supreme Court precluded the review of such agreements:

> If an appeal should be allowed from a consent decree, the appellate court would examine the record not to determine error, but to determine whether or not the parties erred in making the stipulation or in giving their consent there-

to. Appellate courts do not have such authority.

(citations omitted).

Pond cites *Mercantile Nat'l Bank of Indiana v. Teamsters Union Local No. 142 Pension Fund*, 668 N.E.2d 1269 (Ind. Ct.App.1996), for the proposition that the terms of an agreed order are binding on a creditor of one of the parties. In *Mercantile Nat'l Bank of Indiana*, Highland Lumber & Supply, Inc. ("Highland") and the Union were parties to a collective bargaining agreement that obligated Highland to pay pension fund contributions to the Union on behalf of its members. *Mercantile Nat'l Bank of Indiana*, 668 N.E.2d at 1271. Two lenders commenced a foreclosure action against Highland. *Id.* at 1270. The lenders and Highland entered into an agreed judgment, which provided:

> That Lenders shall pay all payroll and payroll taxes accrued through and including March 20, 1995, and pay all Indiana sales tax liability accrued through and including March 20, 1995. Lenders' obligation to make such payments shall not exceed $95,426.73 in the aggregate.

*Id.* The Union was unaware of the agreed judgment. *Id.* Highland failed to pay pension fund contributions through March 20, 1995. *Id.* at 1271. The Union unsuccessfully attempted to collect the pension fund arrearage from Highland. *Id.*

On March 30, 1995, the Union filed a motion to intervene and a motion for relief from judgment and urged the trial court to find that the direction to "pay all payroll" included payment of delinquent pension fund contributions. *Id.* The trial court granted the Union's motion and interpreted the agreed judgments to require Lend-

---

**7.** Because we determine that McNellis and Pond were judgment creditors, we need not determine whether they were real parties in interest.

ers to pay pension fund contributions in the amount of $8,924.00 to the Union. *Id.*

On appeal, we held that by intervening, the Union is treated as an original party and is bound by the prior agreed judgments between the lenders and Highland. *Id.* at 1272. We also held:

> Union is asking us to allow a party to intervene in order to attack an agreed judgment between two other parties. If we allow Union to do so, we would be eroding and undermining the cardinal principle of finality. This we cannot do. We must encourage litigants to settle their controversies by agreed judgments. If interpretation, review and appeal of agreed judgments are permitted, the entire purpose of agreed judgments is defeated.

*Id.*

 On the other hand, this court has found agreed judgments nonbinding as to a nonparty. In *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548 (Ind.Ct. App.2003), this court addressed the issue of whether a defendant could be held to an agreed judgment when the defendant was not a party to that judgment. In *GKN*, Larry Magness, a truck driver employed by subcontractor Starnes, fell while working on a construction project for which GKN was the general contractor. *GKN*, 798 N.E.2d at 549. Magness sought recovery from GKN, and the trial court approved an agreed judgment between Magness and GKN, wherein Magness accepted responsibility for 20% of the negligence and GKN accepted responsibility for 80% of the negligence. *Id.* at 551. After settling with Magness, GKN brought an indemnity complaint against Starnes. *Id.* at 550. On appeal from the grant of summary judgment to Starnes, this court recognized that a material issue of fact remained regarding Magness's negligence, reasoning as follows:

> Specifically, we need to determine whether Starnes can be held to the Agreed Judgment when Starnes was not a party to that judgment. We hold that it cannot. Although Starnes was not a necessary party to the Agreed Judgment, we believe that it would be unfair to allow GKN and Magness to create a judgment which, in essence, would force Starnes to pay for Magness's injuries. GKN has argued, and no doubt will argue again, that the Agreed Judgment makes Magness's negligence clear—that Magness was twenty per cent at fault. However, we are hesitant to agree with that conclusion. If we follow that reasoning, a general contractor will be able to approach an injured worker and offer that worker money for his injuries immediately and thereby allow the worker to collect his money without presenting evidence at trial. However, by admitting to a percentage of the negligence, the worker (perhaps unknowingly) binds the subcontractor to a judgment in which the subcontractor is not a party . . . .

> Here, GKN and Magness entered into an agreement in which GKN agreed to pay eighty percent of Magness's damages. However, any statements regarding Magness's admission of negligence are tantamount to dictum. Therefore, a genuine issue of material fact remains regarding Magness's negligence.

*Id.* at 555–556. We find *GKN* instructive and conclude that it would be unfair to hold McNellis and Chrzan liable for the amount of attorney fees determined in the agreed judgment and that a genuine issue of material fact exists regarding the amount of attorney fees incurred directly from the challenge to the validity of Pond and Armentrout's postnuptial agreement. *See, e.g., Tack's Steel Corp. v. ARC Const. Co., Inc.,* 821 N.E.2d 883, 889 (Ind.Ct.App.

2005) (holding that agreed judgment was nonbinding to a nonparty and that genuine issue of material fact regarding negligence existed).

In summary, the trial court should have denied McNellis and Chrzan's motion for summary judgment. The trial court should have granted Pond's motion for summary judgment to the extent that McNellis and Chrzan were liable for restitution, but denied summary judgment regarding the amount of attorney fees, which remains an issue to be decided by the trial court.

For the foregoing reasons, we reverse and remand the trial court's grant of summary judgment to McNellis and Chrzan and affirm in part, and reverse in part, the trial court's denial of summary judgment to Pond.

Affirmed in part, reversed in part, and remanded.

DARDEN and BAILEY, JJ. concur.