

**FILED**

Sep 16 2020, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Neal F. Eggeson, Jr.<br>Eggeson Privacy Law<br>Fishers, Indiana | Kimberly E. Howard<br>Fisher Maas Howard Lloyd &<br>Wheeler PC<br>Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shannon M. North and Miles T. North,<br><br>*Appellants-Plaintiffs,*<br><br>v.<br><br>Selective Insurance Company of South Carolina,<br><br>*Appellee-Defendant.* | September 16, 2020<br><br>Court of Appeals Case No. 20A-PL-639<br><br>Appeal from the Allen County Superior Court<br><br>The Honorable Jennifer L. DeGroote, Judge<br><br>Trial Court Cause No. 02D03-1811-PL-431 |

**Sharpnack, Senior Judge.**

## Statement of the Case

Appellants Shannon North and Miles North (the Norths) appeal the trial court's denial of their motion for partial summary judgment and its grant of Selective Insurance Company's motion for summary judgment. We affirm.

# Issue

The Norths present two issues which we consolidate and restate as: whether the trial court erred by denying the Norths' motion for partial summary judgment and by granting Selective's motion for summary judgment, concluding the umbrella policy of James North did not include underinsured and uninsured motorist (UM/UIM) coverage.

# Facts and Procedural History

James North is the father of Miles North. In February 2018, James applied for and received a personal umbrella policy issued by Selective. The umbrella policy defined the term "insured" to include relatives of James that resided in James' household. Appellants' App. Vol. II, p. 91. At the time the policy was issued and at all relevant times in this case, Miles, his wife Shannon, and their two children resided with James and his wife.

In April 2018, Shannon and her two children were involved in a car accident that caused Shannon serious and permanent injuries. The other driver's automobile liability insurance paid its full limits of $50,000 to Shannon and the children, and Shannon and Miles' automobile liability insurance paid its UM/UIM coverage limits of $300,000.

The following November the Norths filed a complaint for damages against several defendants, all of whom have been dismissed except Selective. The Norths seek to obtain UIM coverage from Selective under James' umbrella policy for Shannon's accident. In August 2019, the Norths moved for partial

summary judgment; Selective filed a response and a cross motion for summary judgment. Following a hearing, the trial court denied the Norths' motion and entered summary judgment for Selective. This appeal ensued.

## Discussion and Decision

The trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012), *trans. denied*. This Court applies the same standard of review as the trial court: summary judgment is appropriate only where the designated evidentiary matter shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423-24 (Ind. 2015); *see also* Ind. Trial Rule 56(C). Appellate review of a summary judgment is limited to those materials specifically designated to the trial court, and all facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 688 (Ind. 2010).

Further, we review de novo a trial court's ruling on summary judgment, *Morris v. Crain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017), and we may affirm the summary judgment on any theory or basis supported by the designated materials. *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 301 (Ind. Ct. App. 2015). The fact that the parties made cross motions for summary judgment

does not alter our standard of review; rather, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind. Ct. App. 2006), *trans. denied*.

[8] The parties' arguments concern Indiana Code section 27-7-5-2, which governs the obligations of insurance carriers to provide UM/UIM coverage to Indiana drivers. The version of this statute applicable to this case requires:

> (a) Except as provided in subsections (d), (f), and (h), the insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:
>
>> (1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000). Insurers must make underinsured motorist coverage available to all existing policyholders on the date of the first renewal of existing policies that occurs on or after January 1, 1995, and on any policies newly issued or delivered on or after January 1, 1995. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(b) A named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

A rejection of coverage under this subsection by a named insured is a rejection on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy. No insured may have uninsured motorist property damage liability insurance coverage under this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal or replacement policy issued to the same insured by the same insurer or a subsidiary or an affiliate of the originally issuing insurer. Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section.

(c) A rejection under subsection (b) must specify:

(1) that the named insured is rejecting:

(A) the uninsured motorist coverage;

(B) the underinsured motorist coverage; or

(C) both the uninsured motorist coverage and the underinsured motorist coverage;

that would otherwise be provided under the policy; and

(2) the date on which the rejection is effective.

********

(h) The following apply to the coverage described in subsection (a) in relation to a personal umbrella or excess liability policy:

(1) An insurer is not required to make available the coverage described in subsection (a) under a personal umbrella or excess liability policy.

(2) An insurer that reduces or removes, through a rider or an endorsement, coverage described in subsection (a) under a personal umbrella or excess liability policy shall:

(A) through the United States mail; or

(B) by electronic means;

provide to the named insured written notice of the reduction or removal.

(3) An insurer that makes available the coverage described in subsection (a) under a personal umbrella or excess liability policy:

(A) may make available the coverage in limits determined by the insurer; and

(B) is not required to make available the coverage in limits equal to the limits specified in the personal umbrella or excess liability policy.

Ind. Code § 27-7-5-2 (2013).

[9] To summarize, insurers issuing automobile liability policies *must* provide UM/UIM coverage in specified amounts *unless* the insured affirmatively rejects it in accordance with the statutory rejection requirements of Subsections 27-7-5-2 (b) and (c). On the other hand, an insurer issuing a personal umbrella policy is *not required* to include UM/UIM coverage. Although not required to, an insurer *may* offer UM/UIM coverage as part of a personal umbrella policy, and, if so offered, an insured may purchase it, if desired.

[10] The Norths contend that the right of an insured to reject UM/UIM coverage and the requirements of that rejection as set forth in Subsections 27-7-5-2 (b) and (c) apply not only to automobile liability policies but also to personal umbrella policies. Based on that contention, they assert that the statutory requirements for rejection were not met in this case, and thus James should be afforded UM/UIM coverage under his personal umbrella policy in effect at the time of Shannon's accident.

[11] The Norths' argument ignores Subsection (h) of the statute concerning personal umbrella policies. Subsection (h) states that, under a personal umbrella policy,

insurers may, but are not required to, make available UM/UIM coverage. Thus, with regard to a personal umbrella policy, inclusion of UM/UIM coverage is dependent upon (1) whether UM/UIM coverage was available from the insurer and (2) whether the insured requested, and perhaps more importantly purchased, the coverage as part of the policy.

[12] The parties agree that UM/UIM coverage was available from Selective in its personal umbrella policies. The issue lies with whether James requested and purchased it.

[13] Selective issued a personal umbrella policy quote to James, which lists "Base Premium," "Additional Motorcycles/Mopeds," and "Swimming Pool" with corresponding premium amounts. There is a total annual policy premium of $238.00 which equals the total of the above-mentioned premium amounts less a credit for having Selective home and auto policies. Appellants' App. Vol. II, p. 79 (Plaintiffs' Desig. Ex. D-1).

[14] James then submitted a personal umbrella application, the first page of which contained this section:

| UMBRELLA INFORMATION | | | | |
|---|---|---|---|---|
| COVERAGES | | PREMIUMS | | CALCULATIONS |
| POLICY AMOUNT | RETENTION | BASIC | $ 239 | |
| $ 1,000,000 | $ | RESIDENCES | $ | |
| OPTIONAL COVERAGES TO APPLY | | AUTOMOBILES | $ 54 | |
| COVERAGE | LIMIT | RECREATIONAL VEHICLES | $ | |
| UNINSURED MOTORIST * | $ | UNINSURED MOTORIST | $ Rejected | |
| UNDERINSURED MOTORIST * | $ | UNDERINSURED MOTORIST | $ Rejected | |
| CODE   COVERAGE | LIMIT | WATERCRAFT | $ | |
| | $ | | $ | |
| | $ | DEPOSIT | $ | |
| * IF APPLICABLE IN YOUR STATE | | ESTIMATED TOTAL PREMIUM | $ $238.00 | |

*Id.* at 117 (Plaintiffs' Desig. Ex. E-1). As shown in the above, under the "OPTIONAL COVERAGES TO APPLY" heading, UM and UIM coverage are listed with the dollar amount left blank. In addition, under the "PREMIUMS" heading, the UM and UIM contain the typewritten word "Rejected" in the blanks for the dollar amount. In addition, the "ESTIMATED TOTAL PREMIUM" of $238.00 matches the total annual policy premium amount in the quote Selective provided to James. At the end of the application, James signed in the box labeled "APPLICANT'S SIGNATURE." *Id.* at 122. Right above James' signature is this statement: "APPLICANT'S STATEMENT: I HAVE READ THE ABOVE APPLICATION AND ANY ATTACHMENTS. I DECLARE THAT THE INFORMATION PROVIDED IN THEM IS TRUE, COMPLETE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF. THIS INFORMATION IS BEING OFFERED TO THE COMPANY AS AN INDUCEMENT TO ISSUE THE POLICY FOR WHICH I AM APPLYING." *Id.*

[15] Finally, the declarations page of the personal umbrella policy that Selective issued to James lists the same base premium, additional autos, and swimming pool with corresponding premium amounts and total annual policy premium as the quote. Additionally, the policy includes:

> III. Exclusions
>
> *****
>
> C. We do not provide:

*****

> 2. Uninsured Motorists Coverage, Underinsured Motorists Coverage, or any similar coverage unless this policy is endorsed to provide such coverage.

[16] The evidence shows that the quote provided to James does not include a premium for UM/UIM coverage. In addition, nowhere in the application does it indicate that James requested UM/UIM coverage as part of the personal umbrella policy. In fact, the notation in James' application states that UM/UIM coverage was "rejected." This notation was an additional signal to James that he was not applying for UM/UIM coverage. Contrary to the Norths' arguments, the mere use of that term does not, as a matter of course, trigger or relate to the statutory rejection requirements applicable to automobile liability policies. Perhaps a better term would have been "not requested" or "not included." Nevertheless, because an insurer is not required to make available UM/UIM coverage in personal umbrella policies, it would be inconsistent to require an insurer to obtain a written rejection of coverage that it was not required to make available in the first place. Stated another way, one need not reject something that is not included to begin with. While UM/UIM coverage was available from Selective with an endorsement, there is no evidence James applied for or purchased it, and there is no endorsement for UM/UIM coverage in James' policy. Accordingly, James did not have UM/UIM coverage under the personal umbrella policy issued to him by Selective and in effect at the time of Shannon's accident.

# Conclusion

[17] Based on the foregoing, we conclude the trial court did not err when it denied the Norths' motion for partial summary judgment and granted Selective's motion for summary judgment.

[18] Affirmed.

Bailey, J., and Robb, J., concur.