## SHOEMAKER, Auditor of State, *v.* THE BOARD OF COMMIS-SIONERS OF GRANT COUNTY and Another.

JUDGMENT.—*Process.*—A judgment rendered against a defendant not served with process, and who does not appear in person or by attorney, is void.

APPEAL.—*Void Judgment.*—A party has the right to appeal from, and obtain the reversal of, a void judgment.

ACTION.—*Party.*—No one can maintain an action unless he has some interest in the matter in controversy.

SAME.—The interest necessary to the maintenance of an action may be separate, or joint, or in common; if the interest is separate, then the action must be brought separately by each person interested. If the interest is joint, then all persons interested must unite as plaintiffs, but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason therefor being stated in the complaint. When the ques-tion involved is one of common or general interest to many persons, or where the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

STATE BOARD OF EQUALIZATION.—The State Board of Equalization of 1869 was illegal in its construction or organization; and in consequence thereof, its acts were illegal and void.

SAME.—*Action.*—*Parties.*—*Injunction.*—Although the order made by the State Board of Equalization in 1869, directing twenty per cent. to be added to the valuation of real estate in Grant county was illegal and void, and the tax arising from this illegal addition has been paid into the State treasury; an action cannot be maintained by the Board of Commissioners of Grant

county jointly with a tax payer of said county, to have the county treasurer restrained from paying into the State treasury a like sum of legal taxes subsequently collected, and to have him retain the same in his hands for the plaintiffs.

SAME.—If it had been alleged and shown that said tax payer owned taxable real estate, and had paid his taxes for 1869, and that he had a common and general interest with many persons, or that the parties were numerous and that it was impracticable to bring them all before the court, then he might have maintained an action for himself and for the benefit of the whole in a case where the facts entitled them to relief.

SAME.—*Board of Commissioners.*—If money was illegally collected from the owners of real estate in Grant county, by reason of an illegal order made by the State Board of Equalization, it belongs to the owners of the real estate, and not to the board of commissioners of said county. The board of commissioners cannot maintain an action for the money, in their official and corporate capacity, unless the money if collected would belong to the county.

COUNTY TREASURY.—When money is paid into the treasury of a county, it must remain there until paid out in the manner prescribed by law.

ILLEGAL TAX.—*State as Trustee.*—If an illegal tax is collected and paid into the State treasury, the State holds it in trust for the persons who paid it. If the money was collected by the sale of the tax payer's property, or was paid under protest to avoid such sale, the State becomes the legal trustee; but if it was voluntarily paid, and not under protest, the State then becomes the equitable trustee.

ACTION AGAINST THE STATE.—The State cannot be sued, nor can the same object be accomplished by indirection.

CREDITORS OF THE STATE.—If an illegal tax has been paid, and it has gone into the State treasury, the persons paying the tax are the creditors respectively of the State to the amount of illegal tax which each has paid, and like other creditors of the State their remedy is to ask the law making power to make the proper appropriations.

TAX.—*Illegal Tax.—Statute Construed.*—Sections 120 and 121, 1 G. & H. 101, were intended to meet and provide for individual and occasional instances of erroneous charges and miscalculations, and were not intended to apply to and govern a case where an illegal tax has been assessed against almost the entire body of tax payers in a county.

SAME.—*Injunction.— Voluntary Payment.*—Persons who have illegal taxes assessed against them may enjoin the collection of the same. If they fail to do so and voluntarily pay the same, their only remedy is an appeal to the justice of the law making power.

APPEAL from Grant Circuit Court.

BUSKIRK, J.—This was an action commenced in the Grant Circuit Court, by the Board of Commissioners of Grant county and John Brownlee, plaintiffs, against John C. Shoe-

maker, Auditor of State, William Neal, auditor of Grant county, and Reuel J. Gauntt, treasurer of Grant county, defendants.

The complaint was filed April 10th, 1871, and on the same day a temporary restraining order was granted prohibiting the defendant Gauntt, as treasurer of Grant county, from paying over certain state taxes collected by him to the treasurer of state.

The record shows that upon the filing of the complaint process issued for the defendant Shoemaker, as Auditor of State, but that it was never returned, the record stating affirmatively the non-return of the process.

At the June term, 1871, of said Grant Circuit Court, the defendant Neal, as auditor, and the defendant Gauntt, as treasurer of Grant county, filed their separate answers to the plaintiff's complaint, each answering a substantial admission of the allegations of the complaint. The record shows no appearance by the defendant Shoemaker, nor does it disclose any fact from which it is possible to infer that the court below ever, in any way, acquired jurisdiction of his person.

The plaintiff filed a reply to said answers, denying so much thereof as is inconsistent with the complaint. Afterward, and at the June term, 1871, a default was taken against the defendant Shoemaker, and thereupon a final decree was rendered in conformity with the prayer of the complaint, and perpetually enjoining the defendant Gauntt from paying certain state taxes collected by him as treasurer of Grant county into the state treasury.

A brief statement of the matters alleged in the complaint, and found and adjudged by the final decree, seems to be necessary to a proper understanding of the case.

The complaint commences as follows:

"The Board of Commissioners of Grant county, in the State of Indiana, and John Brownlee, a citizen and tax payer of the said county of Grant, who is charged with the illegal taxes hereinafter named, and others who join and contribute,

etc., complain of John C. Shoemaker, Auditor of the State of Indiana," etc.

The allegations of the complaint which follow are briefly these, namely:

That there was made by and returned to the proper officers of Grant county, in the year 1869, a legal and valid appraisement of the taxable real estate situated within the said county, after which a legal county board of equalization was held in the said county; second, that subsequently there met at Peru, Miami county, Indiana, the county auditors of the several counties in the eighth congressional district of the State, who held and constituted themselves into a pretended board of equalization, and among other things appointed one of their number to act as a member of the State Board of Equalization to meet at the city of Indianapolis; that said pretended board of equalization had no power or authority to hold said session at the time and place, nor had they power or authority to so appoint one of their number a delegate to attend said State Board; third, that afterward, one of the auditors from each of the congressional districts of the State, including said auditor so appointed by and from said eigthth district, met at Indianapolis and constituted themselves into a pretended State Board of Equalization, and continued in session more than twelve days, the law in such cases allowing them to remain in session but ten days; fourth, that said pretended State Board of Equalization, on the twelfth day of their said pretended session, made an order, together with other orders relating to other counties, that the valuation of the real estate in Grant county, should be increased, etc., twenty per cent., etc.; fifth, that in pursuance of said order, the auditor of state issued to the several county auditors, including the auditor of Grant county, a circular or order to increase the valuation of said taxable property as aforesaid; sixth, that the auditor of Grant county, in obedience to said order, made out and delivered to the treasurer of said county the tax duplicate of said county for the years 1869 and 1870, based upon and

including said addition of twenty per cent.; seventh, that the state, school, and sinking fund taxes so made out and charged in said duplicates for said county for the years aforesaid, are for each year twenty-seven thousand dollars; that all of the taxes for 1869 have been collected and paid over to the proper treasurer of state, except such as became delinquent, and that a large part of the taxes for 1870, have been by said treasurer of Grant county collected, but have not been paid over to the state treasurer; eighth, that said order of said pretended State Board of Equilization, increasing said taxable property in the valuation thereof, was and is void, etc.; ninth, that said auditor of state is requiring said treasurer of Grant county to pay over said taxes so collected for 1870, and also such of the taxes for 1869 as may not have been paid over; and unless the said treasurer is restrained, he will pay the same over, including said amount so wrongfully collected on account of the said addition of said twenty per cent.; tenth, that said auditor of Grant county is about to make out the duplicate for 1871, so as to include such wrongful addition of twenty per cent. Then follows a prayer for special and general relief.

The decree of the court below, after adjudging the auditor of state to have made default, finds as follows, namely:

First, that said order of said State Board of Equalization, made in 1869, is illegal and void, and that the addition of twenty per cent., made to the value of the taxable real estate in said county, made in pursuance of said order, was and is illegal.

Second, that this illegal increase amounted on all the real estate in said county, in the aggregate for the year 1869, to $544,760, and for the year 1870 to the like sum of $544,760.

Third, that the taxes collected for state, school, and sinking fund purposes for 1869, and paid over to the state treasurer, amounted in the aggregate to the sum of $2,069.50.

Fourth, there has been collected of the delinquent taxes of 1869, the sum of $2,400, of which $233.84 is illegal, as

being the proceeds of said illegal addition to the valuation of real estate.

Fifth, that the total illegal tax collected on the duplicate of 1869, for state, school, and sinking fund purposes, including that paid over to the state treasurer, and that still in the hands of the county treasurer, is $2,303.34, as follows:

Collected and paid over.................................$2,069.50
Delinquent tax of 1869, collected in 1870, and still
    in hands of county treasurer......................... 233.84

      Total...............................................$2,303.34

That of this total of $2,303.34, $842.70 thereof were levied and collected for state purposes proper: $898.81 for school purposes, and $561.81 for sinking fund purposes.

After making these and a few other special findings, the court decrees that the defendant Reuel J. Gauntt, treasurer of said county, retain in his hands for the plaintiffs, of said delinquent taxes of 1869, by him collected, the said sum of $2,303.34, which sum he is enjoined from paying over to the auditor or treasurer of state; that this decree be a sufficient voucher to said treasurer for not paying the same over.

The first error assigned is that a default was taken against John C. Shoemaker, the Auditor of State, and a final decree rendered without service of process on him, without his appearance in person or by attorney, and without jurisdiction having been acquired, in any way, of his person. That the judgment rendered against John C. Shoemaker, Auditor of State, is erroneous and void, as to him, is too plain to require either argument or the citation of authorities. We are unable to understand how such a judgment was rendered and entered of record, when it was apparent on the face of the record that he had not been served with process, and had not appeared to the action. There seems to have been a want of that care and attention that should characterize all judicial proceedings. If the appellant, Shoemaker, had been served with process, but failed to appear, and was defaulted, the writ and return thereon should have been made a part

of the record; and unless this was done, the judgment would have been erroneous as to him. It has been suggested, in argument, by the learned counsel for the appellees, that the appellant was not a necessary party, and that, therefore, the judgment should not be reversed for this cause. When counsel discover that they have made unnecessary parties they should dismiss as to them, and not take a default without having in any manner acquired jurisdiction of their persons. A party has the right to appeal from and obtain the reversal of a void judgment or decree.

The second error assigned is, that the plaintiffs below, upon their own showing, have no cause of action. We think that this position is abundantly sustained by the facts in this case, and is supported by the well settled principles of law. No one can maintain an action in our courts unless he has some interest in the matter in controversy. Under our code of practice, the action must be brought in the name of the real party in interest, except that an executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is brought.

The interest necessary to the maintenance of an action may be separate, or joint, or in common. If the interest is separate, then the action must be brought separately by each person interested, for those having a separate interest cannot join in an action. If the interest is joint, then all persons interested must unite as plaintiffs; but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint. When the question involved is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole. 2 G. &. H. 34 to 37, secs. 3 and 4, and p. 47, sec. 19.

So far as appears from the complaint, the plaintiffs in this action have no interest, joint, separate, or in common with

others, in the money which the county treasurer is required to retain for them in the county treasury, and which he is enjoined from paying into the state treasury. The plaintiffs below are volunteers in a controversy where they have no rights to assert and no duties to perform, concerning a matter in relation to which they labor under no responsibilities.

What are the facts? The State Board of Equalization of 1869, owing to fatal technical objections, was illegal in its constitution or organization, and in consequence thereof its acts were illegal and void, as was held by this court in the case of *The State, ex rel. Evans, Auditor of State,* v. *McGinnis, Auditor of Marion County,* 34 Ind. 452. This board, however, in equalizing the valuation for taxation of the taxable real estate situated in the eighth congressional district, made an order requiring twenty per cent. to be added to the value of the real estate subject to taxation, situated in Grant county. The auditor of state, believing this order to be valid, directed the auditor of Grant county to carry it out. The auditor of Grant county, acting in good faith, carried out the instructions of the auditor of state in making out the duplicates for 1869 and 1870, by adding in said duplicates twenty per cent. to the valuation of each tract or parcel of real estate entered on said duplicates for taxation. In consequence of this, the owners of real estate situated in Grant county, who paid their taxes assessed in 1869, paid an excessive tax for state, school, and sinking fund purposes, because they paid on an excessive and illegal valuation of the several parcels of real estate owned by them respectively. How much excess each owner paid does not appear, but the aggregate amount of the excess paid by all the owners of real estate situated in Grant county, assessed for state, school, and sinking fund purposes for 1869, and paid without being returned delinquent, amounted to two thousand and sixty-nine dollars and fifty cents. This sum was paid into the state treasury by the treasurer of Grant county. Some of the taxes assessed in Grant county, on both personal and real estate, for state, school, and sinking fund purposes for 1869, were returned

delinquent, and a part of these delinquent taxes were paid in 1870, amounting to twenty-four hundred dollars. Of this amount the larger portion, to wit, twenty one hundred and sixty-six dollars and sixteen cents, was legally assessed and collected, while the residue, two hundred and thirty-three dollars and eighty-four cents, is the proceeds of this illegal addition of the twenty per cent. to the value of the real estate situated in Grant county. Now, because a certain class of persons liable to be taxed in Grant county (namely, persons owning real estate in that county) paid to the State an illegal or excessive tax on their real estate for the year 1869, amounting in the aggregate to two thousand and sixty-nine dollars and fifty cents, it is assumed that the courts of Grant county can enjoin the treasurer of Grant county from paying into the treasury of the State the like sum of two thousand and sixty-nine dollars and fifty cents of legal taxes subsequently collected by said county treasurer for the State. The decree in this case is based on this assumption, and directs the county treasurer to retain for the plaintiffs (that is, for the board of county commissioners of Grant county and John Brownlee), out of the delinquent taxes of 1869, a certain sum which he is enjoined from paying into the state treasury.

This decree, and the assumption on which it is based, cannot stand, except upon the hypothesis that the tax illegally collected in 1869 on the real estate situated in Grant county belongs to the board of commissioners of Grant county and to John Brownlee, or to the one or the other of them, or upon the supposition that the said board of commissioners and John Brownlee are the trustees for, or guardians of, the persons who paid the tax.

We do not think that either assumption can be sustained. If the money was illegally and wrongfully collected from the owners of real estate, it belongs to them and not to the board of commissioners of said county. They do not sue in their individual characters as citizens and tax payers, but in their official and corporate capacity. They cannot maintain the action in that capacity, unless the money belongs to

the county, and when collected should be paid into the county treasury and become a part of the funds of the county. This theory cannot be sustained, in reason, on principle, or by the authority of adjudged cases. The money was paid by the owners of real estate in that county, and not by the tax payers generally. The board of commissioners of that county have no authority to sue for and on behalf of such tax payers. But suppose the money was retained in the county treasury, what would the board of commissioners do with it? They are not the trustees or guardians of such tax payers, and could not legally pay the money back to the persons who paid it. When the money is once paid into the treasury of the county, it must remain there until it is paid out in the manner prescribed by law. The treasury of Grant county has no claim, either legal or equitable, to this money. If it became a part of the general fund of the county, it would inure to the benefit of such persons as paid taxes only on their polls and personal property, as well as to the persons who paid the taxes on their lands, and it is quite certain that they have no interest in or claim on it. If the money was unlawfully collected from such tax payers by the State, does it legalize the exaction by transferring the proceeds from the state treasury to the treasury of the county in which the lands are situated? Is it so, that the proceeds of an illegal tax collected by the State become the property of the county in which the land upon which the tax was levied happened to be situated? We do not think so. If an illegal tax is collected by the State, and is paid into the state treasury, the State holds it in trust for the persons who paid it. If the money was collected by the sale of the tax payer's property, or was paid under protest to avoid such sale, the State becomes the legal trustee; but if it was voluntarily paid, and not under protest, the State then becomes the equitable trustee.

Nor does it appear from the record that John Brownlee has any interest in this action, or any right to maintain the suit. It is alleged in the complaint that he is a citizen and

tax payer of Grant county, but it is not alleged that he is the owner of any taxable real estate in said county. If he paid no taxes on real estate, he paid none of the money in controversy, and, therefore, he has no interest in the action. If it had been alleged and shown that he owned taxable real estate, and had paid his taxes for 1869, and that he had a common and general interest with many persons, or that the parties were numerous and that it was impracticable to bring them all before the court, then he might have maintained an action for himself, and for the benefit of the whole, in a cause where the facts entitle them to relief.

Section 19 of our code (2 G. & H. 47) provides, that "those who are united in interest must be joined as plaintiffs or defendants." We think it is quite obvious that the board of commissioners of Grant county and John Brownlee, who sues for himself and others, have no such common interest in the subject-matter of this controversy as would authorize them in uniting as plaintiffs. The board of commissioners of Grant county could not possibly have a common interest with Brownlee and others in recovering from the State illegal taxes paid on real estate into the state treasury. The board of commissioners of Grant county do not and cannot hold any real estate which is taxable for state purposes. If they hold real estate in Grant county, they hold it in their corporate capacity for public purposes, free from taxation for state purposes of any kind.

This being the case, how can the board of commissioners have a common interest with the persons who paid these illegal taxes. Their interests are antagonistic to each other. The board of commissioners sue in their corporate capacity; and if they recover the money in controversy, it must go into the county treasury and become a part of the general fund. If Mr. Brownlee, suing for himself and others, recovers the money, it will go to the persons who paid in proportion to the amount paid by each.

But conceding that John C. Shoemaker, Auditor of State, was served with process, and that the plaintiffs have the

right to maintain this action, can the decree in this case rendered by the court below be sustained? We entertain no doubt that the decree is wrong and must be reversed. This decree might have been sustained, if it had been made in 1869, while the treasurer of Grant county had in his hands these illegal taxes, but after the money has been paid into the state treasury, the treasurer of said county cannot be enjoined from paying over to the state treasurer a sum equal to the illegal taxes, which rightfully belongs to the State. The doctrine of set-off or recoupment is not applicable to a sovereign state. To enjoin an officer having moneys of the State in his hands from paying the same into the state treasury on the ground that the State has before received into her treasury a like sum to which she is not entitled, is tantamount to decreeing money to be paid out of the state treasury without an appropriation made by law to make such payment. The law imperatively requires the treasurer of Grant county to pay into the state treasury all the money in his hands belonging to the State; and the law absolutely prohibits the treasurer of state from paying out of the state treasury any money, except upon the warrant of the auditor of state, who cannot issue a warrant unless there has been an appropriation made by law. Section 3 of article 10 of our constitution provides, that "no money shall be drawn from the treasury, but in pursuance of appropriations made by law."

This is, in effect, a suit against the State, without the State or the treasurer of state being made a party. The State cannot be sued, nor can the same object be accomplished by an indirection. The theory upon which the State cannot be sued is, that the law-making power will do full and ample justice to all the citizens of the State. If the land owners of Grant county have paid an illegal tax, which has gone into the state treasury, they are the creditors respectively of the State to the amount which each land owner has so paid, and they must, like other creditors of the State, ask the law-making power to make the proper appropriations, and thus equalize the burdens of taxation.

We have been greatly aided, and our labor much light-- ened, by the very able and carefully prepared briefs filed, and the clear and pointed oral argument made by the learned counsel engaged in this cause.

The judgment is reversed, with costs, and the cause is re- manded, with directions to the court below to dismiss the complaint.

### ON PETITION FOR A REHEARING.

BUSKIRK, J.—The appellees have asked for a rehearing on two grounds.

In the first place, it is claimed that we erred in holding that where money had been collected by a county treasurer on an illegal assessment, and he had paid the same into the state treasury, the same could not be taken therefrom by a decree of a court, but that it could only be paid out in pur- suance of appropriations made by law; and in support of this position we have been referred to sections 120 and 121 of the assessment law, 1 G. & H. 101, which read as follows:

" Sec. 120. Whenever it shall appear to the board doing county business in any of the counties of this State, that by reason of erroneous charges on the tax duplicate, or from any other cause, the treasurer of such county has paid and accounted to said board for more money than was justly due from him on account of county revenue, said board doing county business shall direct the auditor to credit said treas- urer with the sum or sums thus improperly paid, and order the same to be refunded from the county treasury."

" Sec. 121. Whenever similar improper or erroneous pay- ments have been made by any county treasurer to the state treasury, the board doing county business shall direct the auditor to certify said improper or erroneous payments to the auditor of state, under his seal of office, who shall audit and allow the same as a claim against the treasury, and the treas- urer shall pay the same out of any moneys not otherwise appropriated."

We think that it is quite clear, that the above sections have

no application to the case under consideration. The manifest purpose of the legislature was to provide a cheap and speedy remedy, without resort to a regular suit in the courts, for such erroneous charges and mistakes in calculations as might, and frequently do, occur, in making out duplicates and collecting taxes. It was intended to meet and provide for individual and occasional instances of erroneous charges and miscalculations; that the sections above quoted were not intended to apply to and govern a case like the one under consideration, where an illegal tax had been assessed against the almost entire body of tax-payers in a county. The remedy for persons who are thus illegally assessed is to enjoin the collection of such illegal taxes; and if they fail to do so, and voluntarily pay the same, their only remedy is an appeal to the justice of the law making power.

But the remedy provided for obtaining money that has been improperly paid into the state treasury is a special one, and must be strictly pursued. It does not contemplate a resort to the courts. The matter must be presented to the board doing county business, which shall direct the county auditor to certify such improper or erroneous payment to the auditor of state, under his seal of office, who shall audit and allow the same as a claim against the treasury, and the treasurer shall pay the same out of any moneys not otherwise appropriated. There is a valid appropriation as provided by the constitution, but the remedy provided must be strictly pursued, or the auditor of state would have no power to audit such claim. No power is conferred upon the courts to take jurisdiction, or render any decree in the premises. If the auditor of state should refuse to audit such claim he might be compelled to do so by mandate.

In the second place, it is claimed that we erred in ordering the suit to be dismissed, for the reason that it was shown that there were two hundred and thirty-three dollars of delinquent taxes collected on such illegal assessment and valuation, still in the hands of the county treasurer. The decision on the original hearing only extended to and

embraced such taxes as had been actually paid into the state treasury.

We do not deem it necessary to modify our judgment, as the auditor of state will feel bound by our decision to allow the treasurer of Grant county credit for such delinquent taxes.

The petition is overruled, and the clerk is directed to certify the opinion to the court below.

*B. W. Hanna*, Attorney General, and *C. Baker*, for appellant.

*J. Brownlee* and *H. Brownlee*, for appellees.