

IN THE

# Court of Appeals of Indiana

Renaissance Associates I L.P.,
Jonathan Petersen, and Austin Bertrand, Inc.,
*Appellants-Plaintiffs,*

v.

City of Hammond, Indiana,
*Appellee-Defendant.*



FILED

Mar 02 2026, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 2, 2026

Court of Appeals Case No.
24A-PL-2312

Appeal from the
Lake Superior Court

The Honorable
Calvin D. Hawkins, Judge

---

**Opinion by Senior Judge Robb**
Judges May and Brown concur.

**Robb, Senior Judge.**

## Statement of the Case

[1] This appeal is the next in a line of challenges involving the application of the rental fee restriction (Fee Restriction) under Indiana Code section 36-1-20-5(c) (2014) and the rental fee exemption (Fee Exemption) under Indiana Code section 36-1-20-5(a) (2014) in light of existing local residential inspection and registration fee programs in the City of Hammond (Hammond). Renaissance Associates I, L.P. (Renaissance), Jonathan Petersen (Petersen), and Austin Bertrand, Inc. (Austin) (collectively, the Landlords), appeal from the trial court's order granting Hammond's cross-motion for summary judgment and denying the Landlords' motion for summary judgment[1] in actions brought to recover refunds of rental registration fees paid before legislative changes were passed. We affirm.

---

[1] Renaissance also challenges an evidentiary ruling of the trial court. However, given our disposition of this case it is unnecessary for us to address that issue here.

## Issues

The dispositive procedural issue presented in this appeal is whether the trial court erred by denying the Landlords' motion for summary judgment and granting Hammond's cross-motion for summary judgment. The dispositive substantive issue in this appeal is whether a 2015 legislative change to the definition of rental registration or inspection program in Indiana Code section 36-1-20-1.2 (2015), passed with retroactive effect, when read in conjunction with the Fee Restriction language of Indiana Code section 36-1-20-5 (c) (2014), triggers a refund obligation in the absence of explicit statutory language for the same.

## Facts and Procedural History

### A.   Local Ordinance and Legislative Background[2]

"To protect the public health, safety, and general welfare of the city, Hammond created two programs—an inspection program and a rental-registration program. Both programs charge fees for rental units." *City of Hammond v. Herman & Kittle Properties, Inc.*, 119 N.E.3d 70, 74 (Ind. 2019). In 1961, the Hammond City Council adopted Ordinance No. 3337, which established a rental inspection program. Appellants' App. Vol. II, pp. 245-50; Appellants'

---

[2] The Supreme Court's opinion in *City of Hammond v. Herman & Kittle Properties, Inc.*, 119 N.E.3d 70 (Ind. 2019) and this Court's decision in *6232 Harrison Ave. LLC, v. City of Hammond*, 181 N.E.3d 379 (Ind. Ct. App. 2021) provide the source for much of the background provided here to explain how the parties to this appeal arrived at this point and will be cited as such.

App. Vol. III, pp. 2-12. This program authorized the inspection of all dwelling units, including both owner-occupied and rented. It also charged an annual, five-dollar inspection fee for hotels and rooming houses. And in 2001, the Hammond City Council adopted Ordinance Number 8327,[3] which established a rental registration program. Appellants' App. Vol. III, p. 15. The rental registration program assessed a $5.00 annual fee for each dwelling or rooming unit, with the fee due upon the submission of the registration form. *Id.* at 17. In 2004, Hammond adopted Ordinance 8570, which increased the annual fee to $10.00. *Id.* at 21-22. Then in 2010, Hammond adopted Ordinance Number 9060, which again increased the rental registration fee, resulting in an $80.00 fee. *Id.* at 25-30.

[4] "The eight-fold increase was Hammond's response to the 2010 state constitutional amendment placing caps on property taxes, including a 2% cap on rental properties." *Hermann & Kittle*, 119 N.E.3d at 75. "That amendment led to substantial savings for landlords but also significantly strained many municipal budgets—especially for municipalities, like Hammond, whose tax bases were shrinking." *Id.* "Hammond was not the only municipality to address fiscal restraints by way of rental-unit fees." *Id.* "East Chicago, Griffith, Munster, Nappanee, and Speedway adopted programs to increase rental-fee revenue before tax caps went into effect." *Id.* "After 2010, Bloomington joined

---

[3] Ordinance Number 8327 was also known as Section 96.92 of the Hammond Municipal Code.

Hammond in raising rates; and Crown Point, Evansville, and Valparaiso started charging rental-unit fees." *Id.*

[5] As a result of this activity, the legislature responded in 2011 with the introduction of House Bill 1543, which proposed to add Indiana Code chapter 36-1-20, "Regulation of Residential Leases." *Id.* As introduced, the bill would have barred a number of rental-unit inspection fees and would have banned political subdivisions from requiring rental-unit registration. *Id.* But that provision did not survive the legislative process, and the final version allowed cities to collect inspection and registration fees. *Id.* The fees collected, however, had to be placed in a special fund to reimburse the political subdivision for the costs reasonably related to the services justifying the fees imposed. *Id.* Additionally, the statute had state-wide application and "did not restrict how much municipalities could charge for rental inspections and registrations." *Id.*

[6] In 2013, House Bill 1313 was introduced. Similar to the introduced version of 2011's HB 1543, this bill contained a provision barring local inspection and registration fees on rental units. That provision was removed, "and the final bill instead placed an approximately one-year moratorium on imposing new, or increasing existing, inspection or registration fees." *Id.* And it created an interim study committee to "investigate the regulation of residential leases by political subdivisions." *Id.* (internal quotations omitted).

[7] The study committee gathered evidence from proponents and opponents of residential lease regulations. "One side was concerned that the fees were becoming too costly, negatively impacting housing affordability and new rental development." *Id.* "A representative from Bloomington testified that its program began in 1961, that renters make up 67% of its housing market, and that the city's program protects the welfare of its citizens and the character of the city itself." *Id.* "West Lafayette representatives explained that the city has had an inspection program since 1976, the number of rental units is increasing, and the program protects property and assures parents of students that housing is safe." *Id.* (internal quotations omitted).

[8] In 2014, House Bill 1403 was introduced "to significantly amend Chapter 36-1-20." *Id.* at 76. "In relevant part, the bill included a provision—the 'Fee Restriction'—prohibiting a political subdivision from charging rental-registration fees over $5." *Id.* "About two weeks after the bill with the Fee Restriction was first read, a West Lafayette Representative introduced an amendment adding the 'Fee Exemption.'" *Id.* "The Fee Exemption specified that the Fee Restriction would not apply to a political subdivision with a rental registration or inspection program created before July 1, 1984." *Id.* (internal quotation omitted).

[9] "The Legislative Service Agency issued a fiscal impact statement analyzing the proposed legislation." *Id.* The statement found that, "[t]here are 14 cities or towns that have rental inspection programs. . . . Two of those programs, Bloomington and West Lafayette, would not be affected by the proposed

changes to the law as they were established prior to July 1, 1984." *Id.* That bill was enacted with both the Fee Restriction and the Fee Exemption in place. *Id.* Although not noted in the fiscal impact statement, Hammond also was unaffected by the changes because its programs were established prior to July 1, 1984.

In 2015, House Bill 1165 was introduced, and, as introduced, would have changed Chapter 36-1-20 by "narrowing the Fee Exemption and supplying certain new definitions." *Id.* Various portions of the bill as introduced would have eliminated Hammond and Bloomington from the Fee Exemption. "Ultimately, the language narrowing the Fee Exemption was taken out." *Id.* "Another part of the proposal that would have excluded Bloomington—along with Hammond—from the Fee Exemption was likewise rejected; this part had to do with the definitions of rental registration or inspection program and rental unit." *Id.* (internal quotations omitted). "The proposal sought to define rental registration or inspection program as a program authorizing the registration or inspection of **rental units and no other type of dwelling.**" *Id.* at 76-77 (internal quotations omitted). Both Bloomington's and Hammond's programs would have been excluded because, under their respective programs, inspections and registrations were required for rooming houses as well. *Id.* at 77.

The final bill adopted definitions that excluded Hammond's programs, but not those of West Lafayette or Bloomington. *Id.* "The enacted act defined 'rental registration or inspection program' as 'a program authorizing the registration or inspection of only rental housing.'" *Id.* (quoting P.L. 65-2015, § 1 (codified at

Ind. Code § 36-1-20-1.2 (Supp. 2015)).  "The term does not include a general housing registration or inspection program or a registration or inspection program that applies only to rooming houses and hotels."  *Id.*  Thus, Hammond was excluded from the Fee Exemption:  "(1) because it had a general inspection program that permitted the inspection of non-rental housing[;] and (2) because it required the inspection only of rooming houses and hotels."  *Id.*

## B.  *City of Hammond v. Herman & Kittle Properties, Inc.*

[12]  During this period of legislative activity, Hammond filed a complaint on June 23, 2015 seeking a declaratory judgment that it could continue charging its $80 per-rental fee.[4]  Herman & Kittle refused to pay assessed fees charged by Hammond and protested the charges, citing the Fee Restriction statute.  "[Hammond] argued that that its rental-fee program was not subject to the Fee Restriction's $5 cap because the Fee Exemption [applied to it at that time]."  *Id.* at 76.  After the enactment of House Bill 1165, Hammond "amend[ed] its complaint to add state constitutional claims challenging the Fee Exemption."  *Id.* at 77.  "Hammond argued that the Fee Exemption violated both Article 4, section 22's prohibition of special laws relating to fees and Article 4, Section 23's prohibition of special legislation where a general law can be made."  *Id.*  "Hammond further argued that the Fee Exemption [was] not severable from

---

[4] The declaratory judgment complaint was amended in September to add a statement about venue, and again in November 2015 to add constitutional claims challenging the Fee Exemption as a special law and a violation of the prohibition against special legislation.

the remainder of Indiana Code section 36-1-20-5." *Id.* Ultimately, the Supreme Court concluded that the Fee Exemption was unconstitutional special legislation. *Id.* at 85-87. Nevertheless, the court held that the Fee Exemption was severable from the rest of the statute, resulting in the statewide application of the $5.00 Fee Restriction. *Id.* at 87-89 (the Supreme Court's decision in *Herman & Kittle* did not change the legislative impact on Hammond after the definitional statute passed but merely confirmed that Hammond was subject to the Fee Restriction's $5.00 limit).

## C.    *6232 Harrison Ave. LLC v. City of Hammond*[5]

[13] It was not until after the passage of the 2015 definitional statute that landlords such as Renaissance sought refunds for the 2015 fee registration payments. And it was not until after the 2019 decision in *Herman & Kittle*, that landlords such as Renaissance amended their complaints to raise constitutional arguments to support their refund claims. *6232 Harrison Ave. LLC v. City of Hammond*, 181 N.E.3d 379, 382-83 (Ind. Ct. App. 2021) involved a class action complaint filed in late 2016 by several corporate landowners, which as amended after the Supreme Court's holding in *Herman & Kittle*, alleged that they were due refunds for the payments made above the $5 Fee Restriction made pursuant to Hammond City Ordinance Section 96.152. However, the

---

[5] The *6232 Harrison* case has the same trial court cause number as the present case. *6232 Harrison* was brought on behalf of the seven named plaintiffs and all others similarly situated such as the Landlords. And there was consolidation and de-consolidation of several cases.

main issue in the appeal before this Court was whether the trial court correctly dismissed the landlords' complaint for failure to provide timely notice under the Indiana Tort Claims Act (ITCA).[6]

[14] The 6232 landlords paid their 2015 registration fees on March 6th or 9th of 2015.[7] And they served their ITCA notices on Hammond on August 5, 2015. Hammond argued that the 6232 landlords' complaint should be dismissed because "the [l]andlords knew that they owed the fees on January 1 and, thus, that the August 5, 2015, filing of the notices, 216 days later, was untimely under the ITCA's 180-day filing requirement." *6232 Harrison*, 181 N.E.3d at 383. We observed that "Indiana's case law is clear that the ITCA's 180-day clock begins to run only once some injury is ascertainable by the claimant and also after that injury has been sustained by the claimant." *Id.* at 385. And we acknowledged that "the 180-day requirement 'is intended to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense.'" *Id.* (quoting *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013)). Ultimately, we concluded that "[t]he [l]andlords did not sustain any damage until March 9, 2015, when they paid the City's registration fees[,]"

---

[6] The Indiana Tort Claims Act is found at Indiana Code Chapter 34-13-3 *et seq.* (1998). The notice requirement for claims against political subdivisions is located at Indiana Code section 34-13-3-8 (1998).

[7] The parties disagreed as to the exact date the fees were paid. However, that discrepancy did not alter the resolution of the legal issue.

and "[t]hey filed their notice with [Hammond] within 180 days of those payments." *Id.* at 389.

## D. Aftermath

Thus, the legislative enactment of the definitional statute independently disqualified Hammond from the Fee Exemption. And the Supreme Court's decision in *Herman & Kittle*, decided on constitutional grounds, confirmed that Hammond, like every other city, was not exempt from the $5.00 Fee Restriction.

## E. The Present Controversy

The present controversy involves the question we were not asked in the prior cases: whether landlords who paid the $80 per-unit registration fee before the definitional statute took effect are entitled to a refund of the amount exceeding the $5,00 Fee Restriction. In other words, did the retroactive effective date of the 2015 definitional statute—which independently disqualified Hammond from the Fee Exemption—create a refund obligation for fees already collected?

Pursuant to Hammond's ordinances, the annual rental registration fee is due by April 15th each year. Renaissance owns a rental unit community in Hammond consisting of 450 rental units. Petersen owns one rental unit, and Austin owns two rental units. Petersen and Austin paid the rental registration fee for 2015 on March 27th, and Renaissance paid its 2015 registration fees on April 14. There were several options available to the Landlords in the present case. The options available to the Landlords were (1) to pay and contest later; (2) to pay

under protest; or (3) to not pay and to protest. The landlords in *Herman & Kittle* took the stronger position by both protesting and not paying the fees. Here, the Landlords paid without protest. On April 27th, the Governor signed the bill, including Indiana Code section 36-1-20-1.2 into law, which set out a new definition of rental registration or inspection programs. While the statute took effect retroactively to January 1, 2015, it did not include a provision for refunds of previously charged amounts. Ind. Code § 36-1-20-1.2 (2015).

[18] It was not until after Hammond's 2015 declaratory judgment action was filed, that Renaissance first sent a demand to Hammond's mayor, raising two issues: (1) the retroactive application of the new definitional statute, excluding Hammond from the Fee Exemption, subjecting it to the $5.00 Fee Restriction; and (2) that Renaissance had 450 rental units constituting a rental housing property to be assessed a flat fee of $5.00 total for all of the units, not for each unit. Appellants' App. Vol. II, p. 182 (June 30, 2015 letter). Renaissance submitted its formal notice of claim to the mayor of Hammond and city attorney on August 25, 2015, seeking a refund of the excess payment of fees above the $5 Fee Restriction amount. *Id.* at 185 (Renaissance Notice of Claim). Bertrand's notices were sent on August 27, 2015, seeking a refund of $75 per unit. Appellants' App. Vol. III, pp. 103-04. Petersen's notice of claim was sent on August 27, 2015. *Id.* at 102.

[19] Renaissance filed its complaint against Hammond on October 7, 2016, seeking recovery of $35,995 of the $36,000 licensing fees imposed by Hammond which

Renaissance paid in 2015.[8]  On December 2, 2016, Bertrand as Trustee of the 6241 Fairfield Land Trust, the 4820 Oak Land Trust, and Petersen filed a notice of claim in the Small Claims Division of Lake Superior Court, seeking recovery of $225.  Hammond filed its answer and affirmative defenses as to Renaissance's complaint in early December 2016.  The parties disagreed as to the meaning of the retroactive effect of the new legislative definition in light of no express language providing for refunds.

[20]  Renaissance filed a motion for summary judgment after which Hammond filed its cross motion for summary judgment, and opposition to Renaissance's motion for summary judgment.  A combined hearing on the motions for summary judgment in the Bertrand and Renaissance cases was held after which the trial court denied Renaissance's motion for summary judgment and granted Hammond's cross-motion for summary judgment.  A few days later, the trial court entered an amended order in both cases which granted Hammond's cross-motion for summary judgment and denied Renaissance and Bertrand's motions for summary judgment.  The court then certified the order for interlocutory appeal.

---

[8] This request mirrored what was alleged in their demand to Hammond's mayor; namely, that Hammond no longer applied for the Fee Exemption, and that Hammond was restricted to charging a $5.00 fee for all 450 rental units.

# Discussion and Decision

## I. Competing Summary Judgment Motions

[21] Renaissance, Petersen, and Bertrand contend that the trial court erred by granting summary judgment in favor of Hammond. And they dispute the trial court's denial of their motion for summary judgment. The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind. Ct. App. 2006), *trans. denied*. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[22] We review a trial court's summary judgment order de novo. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 196 (Ind. 2009). We apply the same standard as the trial court: whether the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002). In making this determination, we construe all facts and reasonable inferences in a light most favorable to the non-moving party, *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000), and resolve all doubts as to the existence of a factual issue against the moving party, *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). The moving party has the initial burden to prove that there are no genuine factual issues and that judgment as a matter of law is appropriate, and only then must the non-moving party respond by setting forth specific facts in the designated evidence

demonstrating the opposite is true. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992).

[23] A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley*, 631 N.E.2d 959, 963 (Ind. Ct. App. 1994), *trans. denied*. We may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes*, 689 N.E.2d 734, 735 (Ind. Ct. App. 1997), *trans. denied*. Additionally, we "may determine in the context of summary judgment a mixed question of law and fact." *Ebbinghouse v. FirstFleet, Inc.*, 693 N.E.2d 644, 647 n.2 (Ind. Ct. App. 1998), *trans. denied*.

[24] Renaissance's motion for summary judgment alleged that it had a rental unit community, and that it had paid a registration fee of $80.00 per *rental unit*, for a total payment of $36,000.00, rather than $5.00 for its *rental unit community*. Appellants' App. Vol. II, pp. 114-15 (emphasis added) (Renaissance Summary Judgment Motion). Renaissance alleged that it was entitled to a refund of the overpayment, subject to a maximum $5.00 setoff, as a matter of law for the overpayment of fees in 2015. *Id.* And Bertrand's motion for summary judgment claimed a refund for payments made in 2015 in excess of $5.00 per rental unit.

[25] Hammond responded to Renaissance's motion by asserting immunity from liability under the common law and ITCA. Hammond argued that at the time

it charged the 2015 registration fees, it was acting under a validly enacted statute. Further, Hammond argued that it was entitled to rely on the constitutionality of statutes, which enjoy the presumption of constitutionality. Additionally, Hammond argued that it was not liable for the acts of other governmental entities, such as the legislature. As for its common law arguments, Hammond argued that courts have long recognized immunity from tort liability when acting under a statute that is later declared unconstitutional. And Hammond claimed that "conduct lawful under a statute cannot be later found wrongful due to a Supreme Court decision striking down that statute." Appellants' App. Vol. II, p. 229 (quoting *Ocol v. Chicago Tchrs. Union*, No. 18 C 8038, 2020 WL 1467404, at *2 (N.D. Ill. Mar. 26, 2020), *aff'd*, 982 F.3d 529 (7th Cir. 2020)).

[26] The Landlords' opening brief included the argument that once a statute has been declared to be unconstitutional, it is to be treated as if it had never been enacted. *See* Appellants' Br. pp. 21, 25-29. They made this argument to support their contention that the fees they paid were "illegally" collected and, thus, subject to refund. However, the Landlords paid the fees without protest before the legislature passed the definitional statute, and prior to Hammond's declaratory judgment action. What made the collection of fees in excess of $5.00 "illegal" for Hammond was the legislature's passage of the definitional statute, excluding Hammond from the Fee Exemption, not the Supreme Court's much later decision in *Herman & Kittle*. And it was the Fee Exemption not the definitional statute, that was held to be unconstitutional. *Herman &*

*Kittle*, 119 N.E.3d at 87. Thus, this part of the constitutional argument is unhelpful to resolution of the issue because it was legislative action, not a constitutional decision that prohibited Hammond from collecting fees in excess of the Fee Restriction. The Supreme Court's decision in *Herman & Kittle* prohibited the collection of fees in excess of the Fee Restriction for all cities and towns, in effect confirming what the statutory amendment accomplished; disqualification of Hammond from the Fee Exemption.

The Landlords' reply brief directed our attention *to McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18 (1990)*. In *McKesson*, the United States Supreme Court held that Florida owed relief to a liquor distributor who had paid taxes under a revised excise tax scheme that gave preferential treatment to its competitors. *Id.* at 31, 52. But the key fact in *McKesson* was that Florida enacted its revised scheme *after* the Supreme Court had already struck down a nearly identical scheme in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984). 496 U.S. at 23. Florida, in short, knew its scheme was constitutionally suspect and collected the taxes anyway.

Hammond did the opposite. When Hammond collected the 2015 registration fees, it was operating under a Fee Exemption that no court had questioned and no statute had withdrawn. The legislature only later enacted the definitional statute disqualifying Hammond from the Fee Exemption, with a retroactive effective date. And our Supreme Court did not hold the Fee Exemption unconstitutional until *Herman & Kittle* — a case of first impression decided years after the fees were collected. Unlike Florida in *McKesson*, Hammond had no

reason to doubt the legality of its actions at the time it acted. *McKesson* is therefore inapposite; it stands for the principle that a state cannot collect fees it knows to be unlawful and then resist refunding them. That is not what happened here.

[29] Here, all cities, including Hammond, were subject to the Fee Restriction. The definitional statute independently disqualifying Hammond from the Fee Exemption provided for retroactive effect. Ergo, the retroactive effect of the definitional statute is the basis for the refund argument, not the constitutional law decision in *Herman & Kittle*, which confirmed that Hammond (along with every other city) was disqualified from the Fee Exemption.

[30] Consequently, we asked the parties to tender supplemental briefing to refine the arguments on the central issue of the case, whether the 2015 legislative amendment to the statute triggered a refund obligation, particularly in light of the United States Supreme Court's decision in *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673 (2012). Here, as in *Armour*, the Landlords complain that they are being treated differently—by not receiving refunds after paying the fees in full—than landlords like Herman & Kittle, who protested the fees or did not pay the fees and those that had their obligations forgiven through a grant of amnesty.

[31] "'Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes.'" *Brewer v. Clinton*

*Cnty Sheriff's Office*, 206 N.E.3d 1158, 1164-65 (Ind. Ct. App. 2023) (quoting *Clark Cnty. Drainage Bd. v. Isgrigg*, 966 N.E.2d 678, 681 (Ind. Ct. App. 2012)), *trans. denied*. "'When a statute is clear and unambiguous, we apply the rules of statutory construction and interpret statutory language in its plain, ordinary, and usual sense.'" *Id.* at 1165 (quoting *Cnty. of Lake v. Pahl*, 28 N.E.3d 1092, 1104 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied*). "'However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction.'" *Id.* (quoting *City of N. Vernon v. Jennings Nw. Regional Utils.*, 829 N.E.2d 1, 4 (Ind. 2005)). "When construing a statute, 'we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.'" *Id.* (quoting *City of N. Vernon*, 829 N.E.2d at 5). "We do, however, presume the language in a statute was 'used intentionally' by the Legislature." *Id.* (citing *Burks v. Bolerjack*, 427 N.E.2d 887, 890 (Ind. 1981) ("The language employed in a statute is deemed to have been used intentionally.")). And "[t]hese statutes [] come to us 'clothed with the presumption of constitutionality until clearly overcome by a contrary showing.'" *Horner v. Curry*, 125 N.E.3d 584, 588 (Ind. 2019) (quoting *Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195, 199 (Ind. 2016) (internal quotations omitted)).

## A. *Armour v. City of Indianapolis, Ind.*

[32]   The United States Supreme Court confronted a straightforward question in *Armour v. City of Indianapolis*:  when a government changes how it collects

money, must it refund what it already collected under the old system? The Court said no. 566 U.S. 673, 681 (2012).

[33] In *Armour*, Indianapolis had funded sewer projects by assessing costs to abutting homeowners, who could pay in full or in installments. *Id.* at 676. When the City adopted a new financing method, it forgave all remaining installment obligations but did not refund payments already made. *Id.* at 678-79. Homeowners who had paid in full sued, claiming unequal treatment. *Id.* at 679. The Supreme Court held that the City had a rational basis for drawing a line between past payments and future obligations — a distinction the Court called "well known to the law." *Id.* at 683-84. The Court also recognized that processing refunds would impose administrative costs and require diverting funds from other programs. *Id.* at 683.

[34] Guided by the analysis in *Armour*, we turn to what the legislature provided for here. At the time Hammond collected the 2015 registration fees, it was operating under the Fee Exemption—a provision no court had yet questioned and no statute had yet withdrawn. The fees funded the ongoing operation of Hammond's registration and inspection programs, and the Landlords paid them without protest. The legislature then enacted the definitional statute, which disqualified Hammond from the Fee Exemption going forward. But the legislature did not include a refund provision. It did not direct municipalities to return fees previously collected. And it did not create any mechanism for landlords to recover past payments. That silence is significant. Here, the statute provides no such basis.

Moreover, as in *Armour*, there is a rational basis for the differential treatment of landlords who paid before the statutory change and those who had not. The fees Hammond collected were not sitting in a segregated account awaiting disposition—they funded program operations already underway. Requiring Hammond to process refunds would necessitate identifying which landlords overpaid, calculating individual refund amounts for potentially hundreds of rental units, and diverting public funds from current programs to cover those obligations. The Supreme Court recognized in *Armour* that a government may rationally decline to take on that burden. *Id.* at 683. We see no reason to reach a different conclusion here.

## B. Statutory Relief

The Landlords argue that the holdings from *Armour* are inapplicable and that the case is distinguishable primarily because there is no equal protection challenge in the present case. Appellants' Supp. Br. pp. 4-8. Hammond argues that *Armour* is applicable and, when applied, leads to the conclusion that "providing 'amnesty' for unpaid amounts while not requiring refunds of previously paid amounts is [a] rational and constitutional" justification for Hammond's decision. Appellee's Supp. Br. p. 5. Regardless of how the legal issues are framed, at its core, the Landlords' argument challenges Hammond's decision not to issue refunds, much like the homeowners' challenge of the City's decision not to issue refunds in *Armour,* when others, such as Herman & Kittle, had not paid and their fees were now forgiven.

[37] With the *Armour* analysis as a reference, we turn to what the legislature provided for through the recent statutory amendment process. "The refund of taxes being generally a matter of governmental grace, the State has the authority to provide by statute thereof." *R.B. Raybern & Co. v. Ind. Emp. Sec. Bd.*, 232 N.E.2d 891, 893 (Ind. Ct. App. 1968). What the legislature did not do here, in any of the amendments or additions, is explicitly provide for a refund, or as in *Armour*, explicitly declare that there would be no refunds. If it had provided for a refund, that language would have conflicted with Indiana Code section 36-1-20-3, which requires that "[a]ny fee assessed and collected by a political subdivision pertaining exclusively to a rental unit or rental unit community must be maintained in a special fund dedicated solely to reimbursing the costs actually incurred by the political subdivision relating to the imposition and amount of the fee." "Each fund shall be maintained as a separate line item in the political subdivision's budget." *Id.* "Money in the fund may not at any time revert to the general fund or any other fund of the political subdivision." *Id.* Thus, the absence of refund language is consistent with legislative regulation of rental registration and inspection programs. And since the fee had to bear a relation to the cost of Hammond's obligation for inspection, a refund would require others totally unrelated to the controversy to fund the refund. In other words, the fee had already compensated Hammond for its inspection obligation, meaning that the funds for a refund would have to come from Hammond's general fund.

## C. Tort Remedy

[38] As we stated in *6232 Harrison*, "[a] claim for a refund following an alleged overpayment of a government assessment 'sounds in tort' and, thus, must be claimed following the procedures of the ITCA." 181 N.E.3d at 384. And at its core, the argument the Landlords present is that they overpaid based on their interpretation of the statutory framework after the 2015 legislative amendments. Yet the funds at the time they were paid were not voluntary but required under the then-existing legislation. It was not until the legislative amendment that the issue of overpayment came into question. However, Hammond has not committed a tort.

[39] "Under traditional tort doctrines a violation of a statutory or constitutional obligation may give rise to a civil damage claim. This doctrine is expressed in section 874A of the Second Restatement of Torts[.]" *Cantrell v. Morris*, 849 N.E.2d 488, 497 (Ind. 2006). Section 874A provides:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Restatement (Second) of Torts §874A (1979). And one of the factors to consider in determining whether the court should provide a tort remedy is whether the legislative provision "clearly let both the court and the actor know

*in advance* what conduct is prohibited." Restatement (Second) of Torts §874A, comment h(1) (emphasis added).

[40] Quite clearly, Hammond did not commit a tort by charging the 2015 registration fees under the Fee Exemption, because it did not know in advance that subsequent legislative amendments would prohibit it from charging more than the $5 Fee Restriction amount going forward. Up to April 15, when the assessed fees were due, they were valid because the legislative change had not yet been passed or enacted.

[41] The Landlords cite to *Shoemaker v. Bd. of Cmm. of Grant Cnty.*, 36 Ind. 175 (1871) in support of their position that the fees paid in 2015 excess of $5 were illegally and wrongfully collected and, thus, should be refunded. Appellants' Supp. Br. p. 9. *Shoemaker* held that "[i]f the money was illegally and wrongfully collected from the owners of real estate, it belongs to them and not to the board of commissioners of said county." 36 Ind. at 183. However, under *Shoemaker*, the fees have to be illegally collected. In the present case, Hammond had the right to collect the registration fees due by April 15. Thus, *Shoemaker* is unhelpful here.

## D. Retroactive Application

[42] Next, we address the Landlords' argument that the retroactive effect of the statutory change to the definition of rental registration or inspection program, I.C. § 36-1-20-1.2, triggers a refund obligation on Hammond's part.

[43] "Absent explicit language to the contrary, statutes generally do not apply retroactively. But there is a well-established exception for remedial statutes." *N.G. v. State*, 148 N.E.3d 971, 973 (Ind. 2020) (internal citation omitted). A remedial statute is one that cures a defect or mischief in the prior law. *Id*. But, when the legislature passes a remedial statute, "retroactivity is permissive, not mandatory." *Id*. "[W]e employ a two-step analysis to determine whether an otherwise prospective statute applies retroactively. We first decide whether the relevant law is remedial. If so, we then consider whether retroactive application would effectuate the statute's legislative purpose." *Id*. at 974. If the statute's legislative purpose is served by retroactive application of the statute, a strong and compelling reason exists to apply the statute retroactively. *Id*. "[R]etroactive application is not appropriate if it would violate a vested right or constitutional guaranty." *Id*. at n.1. "In order for a right to vest or a liability to be incurred it must be 'immediate, absolute, complete, unconditional, perfect within itself and not dependent upon a contingency." *Foley v. Consolidated City of Indianapolis,* 421 N.E.2d 1160, 1168 (Ind. Ct. App. 1981) (quoting *Martin v. Simplimatic Eng'g Corp.*, 390 N.E.2d 235, 237 (Ind. Ct. App. 1979)).

[44] The statute at issue, Indiana Code section 36-1-20-1.2 reads as follows: "As used in this chapter, 'rental registration or inspection program' means a program authorizing the registration or inspection of only rental housing. The term does not include a general housing registration or inspection program or a registration or inspection program that applies only to rooming houses and hotels. As added by P.L. 65-2015, SEC.1, eff. Jan. 1, 2015." That statute, read

in conjunction with the Fee Exemption statute, eliminated Hammond's programs from the Fee Exemption. And the definitional statute was passed after Hammond collected the 2015 fees. The Supreme Court's decision in *Herman & Kittle* confirmed what the legislature did when it excluded Hammond from the Fee Exemption. The legislature eliminated Hammond from the Fee Exemption by passing the definitional statute, Indiana Code section 36-1-20-1.2. *Herman & Kittle* eliminated the Fee Exemption for all cities, including Hammond, when it found the Fee Exemption to be unconstitutional special legislation. At least as to Hammond, the Supreme Court decision, regarding Hammond's $5.00 limit, made no changes as to what Hammond could charge post legislative amendments.

[45] The Landlords contend that the legislature intended to provide for refunds by passing the new definitional section with retroactive effect to January 1, 2015. They maintain that the only inference that can be drawn from that legislative action was to allow for refunds of payments made in excess of the Fee Restriction's $5.00. The Landlords also suggest that the retroactive effect acted as a repeal of the Fee Exemption as to Hammond. They cite various cases to support their positions. *See McQuilkin v. Doe ex dem. Stoddard*, 8 Blackf. 581,583-84 (1847) (*repealed statute* "must be considered (except as to transactions passed and closed), as if it had never existed.") (emphasis added); *Shoemaker*, 36 Ind. 175, 183-84 (1871) (*illegal* tax collected by the State, and [] paid into the state treasury" is held "in trust for the persons who paid it."; "If the money . . . was paid under protest to avoid such sale, the State becomes the legal trustee[.]")

(emphasis added); *405 Co. v. State*, 460 N.Y.S.2d 455, 457 (N.Y. Ct. Cl. 1983) (state collected tax pursuant to a statute *later repealed retroactive to the date of its enactment* deemed to never have existed) (emphasis added); *Neal v. United States*, 1998 U.S. Dist. LEXIS 12048 at *23 (W.D. Pa. 1998) (tax statute *repealed retroactively to its date of enactment*, refund allowed) (emphasis added); *AgMax, Inc. v. Countrymark Co-op, Inc.*, 661 N.E.2d 1259, 1262 (Ind. Ct. App. 1996) ("*repeal of a law* obliterates its effect"); *City of Gary v. Indiana Bell Tel. Co.*, 732 N.E.2d 149 (Ind. 2000) (ordinance to charge fee which was *not yet collected* found to be impermissible charge as of date legislature subsequently amended statute prohibiting fee) (emphasis added). Each of these cases are factually distinguishable from this case. The legislature's decision to remove Hammond from the Fee Exemption by enacting the definitional statute did not repeal a law.

[46] And the Landlords' premise for the statutory construction it advances is neither viable nor proper public policy. The charged fees fund the operation of the registration and inspection programs and are to be kept separately from the general fund. Hammond could only charge the actual cost, and those funds are spent. In *Armour*, there was a better case for the award of refunds. Some of the taxpayers had paid in advance for future expenses. In other words the funds had not necessarily been spent. But, a rational basis was found for denying the refunds there. If that is true, there is a stronger rational basis for denying the refunds here.

[47] Further, new laws are presumed to be operate prospectively, unless explicitly stated otherwise, or are remedial. Anything other than prospective application would cause additional administrative expenses to calculate the refunds. In addition, payment of the refunds would have to be subsidized by taxpayers who are not part of the rental property scheme. The prospect of the future nullification of an existing law is no excuse for not complying with the law that exists at the time of the action in question. If that were the case, no one could safely rely on or enforce existing laws because they might be changed.

[48] Here, the change in the definitional statute is not remedial. It does not cure a defect or mischief in the prior law. As such, the exception to the general rule that statutes apply prospectively is inapplicable here. The only reasonable inference that can be drawn from the legislature's decision to make the statute's effective date retroactive to January 1, 2015, is to provide amnesty for those landlords, such as Herman & Kittle, who had not paid the registration fees before the enactment of the definitional statute and Fee Exemption statute was declared unconstitutional.

[49] And there is a rational basis for different treatment of those who had paid the fees before the definitional statute was added. As in *Armour*, the administrative expenses in determining who qualified for the refunds would be high. The money to pay for the refunds would have to be drawn from other aspects of Hammond's budget. Furthermore, the legislature did not provide a mechanism for seeking or issuing refunds. Instead, the collected funds were to be placed in a special fund. Placing the collected funds in the general fund was explicitly

prohibited. I.C. § 35-1-20-3. The retroactive effect of the definitional statute, Indiana Code section 36-1-20-1.2, does not trigger a refund obligation.

[50] The Landlords had several available options. They could have not paid and protested, like Herman & Kittle, or they could have paid under protest. They chose to pay and not protest until after the definitional statute was enacted. Herman & Kittle protested before the definitional statute was enacted.

[51] The essence of this case can be boiled down into its most simple parts. The Landlords' request for repayment must first be analyzed by examining how the statute and its legislative amendments set the stage for the specific inquiry. The statute contains two relevant sections. One section, the Fee Restriction, set the cap (the maximum amount that may be charged) for the registration and inspection. The second section, the Fee Exemption, defines who is excluded from that cap and allows the governmental entity to charge whatever that entity believes is a proper charge. The statutory revisions did not change the section dealing with the cap itself. The revisions, adding the definitional statute, removed Hammond from the definition of who was excluded from the cap. Thus, once the statutory revisions became law, Hammond was therefore subject to the cap just like almost every other entity.

[52] The Supreme Court decision in *Herman & Kittle* found the statutory provisions setting the cap to be constitutional, but found the exclusion was unconstitutional. However, since Hammond had already been removed from the cap exclusion section of the statute, the Supreme Court decision had no

impact on Hammond. The decision merely confirmed what the legislature had done. Hammond remained in the same position before and after the Supreme Court decision.

[53] The specific question raised relates to the provision of the definitional statute back dating the effective date to a date before the Landlords had paid their obligation. In other words, what did the legislature mean by the retroactivity? We find the answer in statutory interpretation and in guidance from *Armour*. Under the circumstances in the instant case, the retroactivity in the statute does not require Hammond to repay the moneys that the Landlords are seeking.

[54] We affirm the trial court.

## Conclusion

[55] Based on the foregoing, we conclude that the trial court did not err by denying the Landlords' motion for summary judgment and granting Hammond's cross-motion for summary judgment. The legislature's 2015 amendment to the definitional statute, Indiana Code section 36-1-20-1.2, applied prospectively and is not remedial in nature. It therefore does not operate retroactively to create a refund obligation for fees that were lawfully collected before its enactment. Had the legislature intended to mandate refunds of previously collected registration fees, it could have expressly provided for that remedy—but it did not. Hammond was entitled to judgment as a matter of law.

[56] Affirmed.

May, J., and Brown, J., concur.

ATTORNEYS FOR APPELLANTS

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Jonathan D. Petersen
Munster, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana